**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1281-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHN E. McDANIEL,

    Defendant-Appellant.

_____

Submitted May 2, 2017 — Decided August 8, 2017

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New
Jersey, Law Division, Ocean County, Indictment
No. 14-04-0973.

Joseph E. Krakora, Public Defender, attorney
for appellant (Theresa Yvette Kyles, Assistant
Deputy Public Defender, of counsel and on the
brief).

Joseph D. Coronato, Ocean County Prosecutor,
attorney for respondent (Samuel Marzarella,
Chief Appellate Attorney, of counsel; Nicholas
Norcia, Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant John McDaniel appeals from his November 5, 2015

judgment of conviction, after conditionally pleading guilty to

second-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1), -5(b)(2). Defendant argues there was insufficient probable cause for issuing a search warrant; the trial court should have held an evidentiary hearing to explore alleged falsehoods in the warrant affidavit; the trial court should have ordered disclosure of a confidential informant's identity, so he or she could be questioned at the hearing; and the trial court erred in its sentencing determination. We affirm.

On January 29, 2014, a municipal court judge issued a search warrant authorizing the Toms River Police Department (TRPD) to search room 142 of a particular hotel in Toms River. The court issued the search warrant based on a sworn affidavit of Toms River Patrolman Andrew Chencharik. He revealed that during the week of January 12, 2014, a confidential informant (John Doe)[1] told him and Detective Duncan MacRae that an individual named "John John" was selling controlled dangerous substances (CDS) in Ocean County. According to Doe, "John John" used various hotel rooms to sell CDS to avoid detection; he explained, however, that he would be able to facilitate a controlled purchase of heroin from "John John." Aware that defendant was known as John John, Chencharik obtained

---

[1] The record does not disclose the informant's gender; however, for convenience's sake we will use a masculine pseudonym when referring to the informant.

his photograph from the New Jersey Motor Vehicle Commission and showed it to Doe, who confirmed he bought heroin from the person pictured.

Sometime during the week of January 26, 2014 — the day was unspecified — Chencharik and MacRae met with Doe at a prearranged location to conduct a controlled purchase of heroin from defendant. In Chencharik's presence, Doe contacted defendant by cell phone to negotiate the purchase of heroin, and defendant instructed him to go to room 142 of the hotel in Toms River. Chencharik stated that "Patrolman Ruiz . . . then established surveillance in the area of room 142 . . . ." Before allowing Doe to conduct the controlled purchase, the officers searched him. After ensuring that Doe did not have any money or drugs, Chencharik and MacRae then provided Doe with confidential funds with which to make the purchase.

While under the constant surveillance of Chencharik and MacRae, Doe drove directly to the hotel. MacRae observed Doe enter and later exit room 142. Thereafter, Doe returned to the prearranged location while Chencharik and MacRae observed him. At that point, Doe gave Chencharik a quantity of what he believed was heroin. Ibid. Doe explained that once he entered the hotel room, he successfully exchanged the confidential funds for the quantity of suspected heroin from defendant. Before being released, the

A-1281-15T4

officers searched Doe, again finding no money or drugs. Chencharik then returned to TRPD headquarters, where a field test confirmed the substance to be heroin.

According to the affidavit, "at a separate and distinct time" during the week of January 26, 2014, Doe contacted Chencharik to report he spoke again with defendant, who told Doe he had additional heroin for sale.

Chencharik also described his efforts to corroborate Doe's tip. A review of NJDMV records revealed defendant's home address, driver's license, and date of birth. A criminal history check disclosed that defendant had eleven prior arrests, eight for drug-related offenses, and five prior drug-related convictions. Chencharik also described his training and experience.

The affidavit stated that an assistant prosecutor reviewed and approved Chencharik's affidavit on January 29, 2014 at 12:51 p.m., although the prosecutor's signature does not appear on the affidavit.[2] Both Chencharik and the municipal court judge's signature appear on the affidavit, although neither reflect the time of day. The separate warrant indicated that the judge approved and signed it at 1:42 p.m. Police executed the warrant seven minutes later.

---

[2] On appeal, the State contends, without reference to any record evidence, that the assistant prosecutor did so "telephonically."

A-1281-15T4

Upon entering room 142, police saw defendant try to flee through the rear sliding door. Police arrested defendant and Danielle Giberson, who was also in the room. Police seized eighty-five wax folds of heroin and $4,014 in cash from defendant, as well as other drugs and paraphernalia in the room. Once back at TRPD headquarters, defendant gave a Mirandized[3] statement, admitting he distributed heroin, the seized heroin and money belonged to him, and the money was from selling heroin. Roughly four months later, defendant was indicted and charged with two counts of third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1), along with second-degree possession with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(2).

Defendant thereafter challenged the veracity of Chencharik's affidavit in a motion to suppress. He sought a hearing under Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and an order disclosing Doe's identity. Defendant relied on two unsworn reports of a defense investigator, Charles Milani, and Chencharik's January 29, 2014 unsworn post-search report.

Milani asserted, based on the hotel's registration information, that Giberson was the registered guest for room 142

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

on January 29, 2014. Milani reported that an unnamed person told him Giberson checked in at 12:31 p.m. and checked out two days later.[4] Milani also reported that a desk clerk told him defendant checked into room 137 on January 28, and room 142 was unoccupied between January 25 and 28.

Chencharik's report stated that he obtained the warrant to search room 142 on January 29. He reported that surveillance was set up "in the area of room 142" at about 11:00 a.m. At some point thereafter, police identified McDaniel exit and return to the room. Chencharik stated that the warrant was executed at about 1:49 p.m. Chencharik said nothing expressly about a controlled buy.

Based on Milani's reports, defendant contended the controlled buy could not have occurred as Chencharik claimed in his affidavit, because defendant allegedly did not occupy room 142 before 12:31 p.m., which, as a practical matter, did not leave enough time to prepare the affidavit by 12:51 p.m. Defendant argued the questionable timeline satisfied his burden to make a substantial preliminary showing of a deliberate falsehood in the affidavit, which warranted a <u>Franks</u> hearing. Defendant also contended that

---

[4] Milani claimed he obtained a copy of Giberson's registration but it was not attached to his report and is not in the record.

Doe's identity should be disclosed so he could be questioned regarding the timeline.

The assistant prosecutor conceded — albeit without the support of any competent evidence — that "this did occur within the 20 or 21-minute period that . . . is alleged"; the warrant affidavit was already drafted; the prosecutor was standing by; and the debriefing location, police headquarters and hotel were all close to each other. She also argued that the accuracy of Doe's information about defendant demonstrated Doe's reliability. The State also contended that disclosing Doe's identity was unwarranted, because probable cause was established and he was not an active participant in the case.

The trial court denied defendant's motions. The court declined to find "any kind of falsification intentional or otherwise with regard to this timeline . . . ." The court concluded that the events reported in Chencharik's affidavit could have occurred within the twenty-minute period, noting the proximity between the hotel and police headquarters.

Thereafter, defendant entered his negotiated guilty plea, conditioned on his right to appeal the denial of his pre-trial motions. The State agreed to dismiss the two possession charges and recommended a fourteen-year sentence, with a fifty-month

period of parole ineligibility.  The court thereafter sentenced defendant in accord with the plea agreement.

Defendant raises the following points on appeal:

POINT I

THE TRIAL JUDGE ERRED IN DENYING MR. MCDANIEL'S MOTION TO SUPPRESS EVIDENCE AS THERE WAS INSUFFICIENT PROBABLE CAUSE TO SUPPORT THE SEARCH BECAUSE THE WARRANT AFFIDAVIT DID NOT PROVIDE ANY INFORMATION CONCERNING THE RELIABILITY OF THE INFORMANT. U.S. CONST. AMEND. IV; N.J. CONST. (1947), ART. I, PARA. 7.

POINT II

THE TRIAL JUDGE ERRED IN DENYING MR. MCDANIEL'S MOTION TO SUPPRESS EVIDENCE AS THERE WAS INSUFFICIENT PROBABLE CAUSE TO SUPPORT THE SEARCHES BECAUSE APPARENT FALSEHOODS OR INACCURACIES IN THE WARRANT AFFIDAVIT REQUIRED A FULL FRANKS HEARING BE CONVENED. U.S. CONST. AMEND. IV; N.J. CONST. (1947), ART. I, PARA. 7

POINT III

THE TRIAL JUDGE ABUSED HIS DISCRETION AND DENIED THE DEFENDANT HIS RIGHT TO DUE PROCESS IN FAILING TO GRANT THE MOTION TO REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9, AND 10.

POINT IV

THE MATTER SHOULD BE REMANDED FOR RE-SENTENCING TO CORRECT AN ERROR IN THE SENTENCING COURT'S FINDINGS.

Defendant argues the warrant lacked sufficient probable cause because it was based primarily on information provided by Doe, and the State failed to establish the basis of Doe's knowledge or his reliability.

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and that a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "[A]n appellate court's role is not to determine anew whether there was probable cause for issuance of the warrant, but rather, whether there is evidence to support the finding made by the warrant-issuing judge." State v. Chippero, 201 N.J. 14, 20-21 (2009). Therefore, we "accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." State v. Sullivan, 169 N.J. 204, 211 (2001) (internal quotation marks and citation omitted).

"When determining whether probable cause exists, courts must consider the totality of the circumstances . . . ." Jones, supra, 179 N.J. at 389 (internal quotation marks and citations omitted). Information from confidential informants may constitute grounds

for probable cause if there is "a substantial basis" to credit it. Ibid. In evaluating an informant's tip, "an informant's veracity and his or her basis of knowledge . . . [are] the two most important factors[.]" Sullivan, supra, 169 N.J. at 212. A trial court may also consider corroborating factors in making its probable-cause determination. See Jones, supra, 179 N.J. at 390. "[R]elevant corroborating facts may include a controlled drug buy performed on the basis of the tip, positive test results of the drugs obtained, records confirming the informant's description of the target location, the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit." State v. Keyes 184 N.J. 541, 556 (2005).

While a controlled buy, alone, "would not conclusively establish probable cause," it is "persuasive evidence." Jones, supra, 179 N.J. at 392 (internal quotation marks and citation omitted). "[E]ven one additional circumstance might suffice, in the totality of the circumstances, to demonstrate probable cause when the police successfully have performed a controlled drug buy." Ibid. "[T]he test is qualitative and not quantitative." Ibid. In Sullivan, supra, the Court adopted the following description of a controlled buy that may support a probable cause finding:

A-1281-15T4

> (1) a police officer meets the informant at a location other than the location where [it is] suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually) furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance.
>
> [169 N.J. at 215 (quoting Commonwealth v. Desper, 643 N.E.2d 1008, 1011 (Mass. 1994)).]

Here, we are satisfied that Chencharik's warrant affidavit, including the information Doe provided, were sufficient to support a probable cause finding. The facts set forth in the warrant affidavit clearly described compliance with the key components of a controlled buy: (1) Chencharik and MacRae met with Doe at an arranged location; (2) the officers searched Doe before and after the controlled buy, to ensure he had no drugs or money, and also provided Doe with confidential funds to make the purchase; (3) MacRae followed Doe to the hotel, and observed him enter and leave room 142; and (4) Doe handed over the purchased substance, which tested positive for heroin.

The record also reflects additional corroboration of Doe's veracity and basis of knowledge. Doe provided explicit details about how defendant conducted his drug transactions, explaining

11

that he used different hotel rooms to avoid detection, which police later confirmed. A criminal history check of defendant revealed multiple prior drug-related convictions.

We reject defendant's argument that since the warrant affidavit failed to establish whether both entrances to the hotel room were under surveillance, there was insufficient evidence to support a finding of probable cause. In Sullivan, supra, the Court explained, "[t]he fact that police were unable to observe the informant enter [the apartment] itself does not prevent a finding of probable cause. Rather, the inability of the police in that regard is one factor to be considered by the issuing judge under the totality-of-circumstances test." 169 N.J. at 216. As such, when considering the totality-of-circumstances, we find that the warrant-issuing judge had sufficient evidence to find probable cause. Therefore, the trial court did not err in denying the motion to suppress on those grounds.

## II.

Defendant next claims the trial court erred in denying his request for a Franks hearing, which was based on his contention that the warrant affidavit contained material falsehoods and inaccuracies. Specifically, defendant contends the events described in the affidavit could not have taken place in twenty-one minutes; the affidavit falsely reported when surveillance

began; and the affidavit failed to disclose the existence of a second door. We are not persuaded.

Under Franks, supra, a defendant is entitled to an evidentiary hearing to contest the veracity of a warrant affidavit, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" Franks, supra, 438 U.S. at 155-56, 98 S. Ct. at 2676, 57 L. Ed. 2d at 672; accord State v. Howery, 80 N.J. 563, 566-68, cert. denied, 444 U.S. 994, 100 S. Ct. 527, 62 L. Ed. 2d 424 (1979). In making a "substantial preliminary showing," a defendant "must allege 'deliberate falsehood or reckless disregard for the truth,' pointing out with specificity the portions of the warrant that are claimed to be untrue." Howery, supra, 80 N.J. at 567. These allegations should be supported by affidavits or other reliable statements; "[a]llegations of negligence or innocent mistake are insufficient." State v. Broom-Smith, 406 N.J. Super. 228, 240-41 (App. Div. 2009) (quoting Franks, supra, 438 U.S. at 171, 98 S. Ct. at 2684, 57 L. Ed. 2d at 682), aff'd, 201 N.J. 229 (2010). Finally, a defendant must show that absent these misstatements,

the search warrant lacks sufficient facts to establish probable cause. Howery, supra, 80 N.J. at 568.

The "substantial preliminary showing" requirement is designed "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Franks, supra, 438 U.S. at 170, 98 S. Ct. at 2684, 57 L. Ed. 2d at 681. Therefore, a defendant's veracity challenge should not be focused on "picking apart minor technical problems with a warrant application;" rather, it should address "warrants obtained through intentional wrongdoing by law enforcement agents[.]" Broom-Smith, supra, 406 N.J. Super. at 240.

We review the court's decision regarding the need for an evidentiary hearing for an abuse of discretion. See United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006)[5]; cf. Broom-Smith, supra, 406 N.J. Super. at 239 (reviewing for abuse of discretion the judge's ruling denying discovery for purposes of a Franks hearing). We discern none here.

---

[5] We recognize that there is an apparent split among federal courts as to the standard of review. See Arbolaez, supra, 450 F.3d at 1293 n.11 (discussing split). However, an abuse-of-discretion standard of review is consistent with our deferential standard of review of a trial court's suppression decision. See State v. S.S., ___ N.J. ___, ___ (2017) (slip op. at 10-12); State v. Robinson, 200 N.J. 1, 15 (2009).

14                                                        A-1281-15T4

Defendant argues that since Giberson did not check into the room until 12:30 p.m., it was impossible that, before then, Doe called him and arranged a purchase, the TPRD set up surveillance, and Doe made the controlled buy. He further argues there was inadequate time for all these events to occur after 12:30 and before the search warrant affidavit was approved. However, defendant's timeline argument is based on an unsworn and uncertified investigation report, R. 1:6-6, which contained embedded hearsay statements. See Franks, supra, 438 U.S. at 171, 98 S. Ct. at 2684, 57 L. Ed. 2d at 682 (stating that a defendant's proofs should be supported by "[a]ffidavits or sworn or otherwise reliable statements of witnesses"). Although defendant claims in his brief that he produced hotel records to the trial court, the record before us includes no such records, or a certification of a person to authenticate them. Thus, defendant's timeline argument lacks the support of reliable evidence.

We recognize that the assistant prosecutor conceded before the trial court that "this did occur within the 20 or 21-minute . . . period that is alleged." However, the statement only relates to the time gap between the controlled buy and the assistant prosecutor's approval of the affidavit. The prosecutor did not concede that the rooms were unoccupied before 12:30; that Doe could not have spoken to defendant before 12:30 to arrange the

buy; or that surveillance could not have been established at 11:00 a.m., as Chencharik stated in his report.

We shall not disturb the trial court's determination that the admitted twenty-one-minute time span between the controlled buy and affidavit approval, was not so implausible on its face as to constitute a preliminary showing of falsehood. The court accepted the argument that the affidavit was, in large part, prepared in advance. Notably, Chencharik apparently signed the affidavit in the presence of the warrant judge almost an hour after the prosecutor approved it. In any event, negligent or inaccurate time-keeping does not entitle a defendant to a hearing. See Franks, supra, 438 U.S. at 170, 98 S. Ct. at 2683, 57 L. Ed. 2d at 681 (refusing to extend its holding to "instances where police have been merely negligent in checking or recording the facts relevant to a probable-cause determination.").

Furthermore, defendant does not contest that a controlled buy took place; rather, he contends the allegedly questionable timeline raised doubt as to "whether the controlled buy ever took place in the manner described by" Doe. (Emphasis added). However, the manner of the controlled buy is not material. The fact that it occurred, in conjunction with other indicia of reliability, established probable cause. See Howery, supra, 80 N.J. at 568 ("the misstatements claimed to be false must be material to the

extent that when they are excised from the affidavit, that document no longer contains facts sufficient to establish probable cause."). Lastly, Chencharik's failure to mention in his affidavit that there was a second door to the hotel room is at most an omission — not a falsehood — and was not material to establishing probable cause.

In sum, because defendant's arguments failed to satisfy the "substantial preliminary showing" requirement, a <u>Franks</u> hearing was not necessary.

### III.

Before the trial court, defendant argued that the court should order the State to disclose Doe's identity, so he could be called to testify at a <u>Franks</u> hearing. As we affirm the trial court's denial of such a hearing, disclosure of Doe's identity was unnecessary. However, defendant presents the newly minted argument that Doe's identity should have been disclosed because it was essential to his defense, in particular, to defendant's ability to challenge Chencharik's credibility. We disagree.

"The State has a 'privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of' the law." <u>State v. Adim</u>, 410 <u>N.J. Super.</u> 410, 433 (App. Div. 2009) (quoting <u>N.J.R.E.</u> 516). Such evidence is "inadmissible, unless the judge finds that (a) the identity of the

person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues." N.J.R.E. 516. When determining whether to disclose an informer's identity, the court is tasked with balancing the State's interest in protecting the informant's identity against the defendant's right to prepare a defense. State v. Milligan, 71 N.J. 373, 384 (1976) (quoting Roviaro v. United States, 353 U.S. 53, 62, 77 S. Ct. 623, 628, 1 L. Ed. 2d 639, 646 (1957)).

However, disclosure will be denied where the informant's participation was, as here, strictly related to the investigation that ultimately resulted in the arrest. Id. at 387-88 (stating disclosure not warranted where informant only "provid[ed] information or 'tips' to the police or participat[ed] in the preliminary stage of a criminal investigation"). Notwithstanding his assistance, Doe was not "an active participant in the crime for which [the] defendant is prosecuted," which is possession and possession with intent to distribute. See State v. Foreshaw, 245 N.J. Super. 166, 180-81 (App. Div.), certif. denied, 126 N.J. 327 (1991). In sum, we discern no abuse of discretion in the court's denial of defendant's disclosure demand. See Adim, supra, 410 N.J. Super. at 436.

Lastly, we discern no merit in defendant's challenge to the court's sentencing decision.  In accord with the plea agreement, the court sentenced defendant to a fourteen-year prison term, with fifty-months of parole ineligibility, after finding that aggravating factors three (risk of defendant committing another offense), six (extent of defendant's prior criminal record), and nine (need for deterrence) substantially outweighed non-existent mitigating factors.  See N.J.S.A. 2C:44-1(a)(3), (6), and (9).

We reject defendant's argument that the court had the discretion to impose less than the fourteen-year term contemplated in the plea agreement.  Defendant was mandatory extended term eligible.  The State entered into a plea agreement pursuant to N.J.S.A. 2C:35-12; in particular, the State agreed to recommend a fifty-month period of parole ineligibility on a recommended fourteen-year (or 168-month) term.  The parole ineligibility period was less than the one-third minimum sentence otherwise required by N.J.S.A. 2C:43-6(f).  Consequently, once the court accepted the plea agreement, it was not free to impose "a lesser term of imprisonment, lesser period of parole ineligibility . . . than that expressly provided for under the terms of the plea . . . agreement."  N.J.S.A. 2C:35-12; see also State v. Leslie, 269 N.J. Super. 78, 84 (App. Div. 1993), certif. denied, 136 N.J. 29 (1994).

Furthermore, based on our review of the record, we are satisfied that the judge's findings regarding the aggravating factors were based upon competent and credible evidence in the record, and the sentencing was consistent with the sentencing guidelines. See State v. Fuentes, 217 N.J. 57, 70 (2014); State v. Roth, 95 N.J. 334, 364-65 (1984). Specifically, the trial court's consideration of aggravating factor nine was supported by defendant's extensive criminal history and prior convictions of possession of drugs with intent to distribute.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION