777 A.2d 60

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MAURICE L. SULLIVAN, SR., DEFENDANT–RESPONDENT.

Argued February 27, 2001—Decided July 26, 2001.

*Frank Muroski*, Assistant Prosecutor, argued the cause for appellant (*Thomas V. Manahan*, Union County Prosecutor, attorney).

*Linda Mehling*, Assistant Deputy Public Defender, argued the cause for respondent (*Peter A. Garcia*, Acting Public Defender, attorney).

*Jordana Jakubovic*, Deputy Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*John J. Farmer, Jr.*, Attorney General, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

Based on an informant's tip and two controlled drug buys, the police obtained a warrant to search an apartment occupied by defendant. As a result of the search, the police discovered cocaine and a handgun. After the trial court denied his motion to suppress that evidence, defendant pleaded guilty to drug- and weapon-related offenses. The Appellate Division reversed, concluding that the evidence should have been suppressed because the government lacked probable cause to obtain the warrant. We disagree. We hold that the record adequately justified a finding of probable cause for the police to obtain the warrant, and thus their seizure of the drugs and firearm from the apartment was valid.

I.

The facts are straightforward. On September 27, 1996, the trial court issued a search warrant authorizing the police to search Apartment A at 705 Kensington Avenue in Plainfield. That apartment is part of a three-story building containing six apartments, two on each floor. Apartment A is located on the first floor. The warrant also authorized the police to search a man identified as "Maurice," who the police suspected was selling drugs out of the apartment. The court issued the search warrant based on a sworn affidavit submitted by Christopher M. Gulbin, a detective with the Union County Prosecutor's Office Narcotics Strike Force.

The affidavit revealed that during the week of September 8, 1996, a confidential informant told Detective Gulbin that a man named Maurice, last name unknown, had been selling cocaine out of Apartment A at 705 Kensington Avenue since June 1996. The informant described Maurice "as a Black male, approximately 20 to 22 years of age, approximately 6'2" tall, weighing approximately 160 pounds, with slight facial hair, brown hair and brown eyes." The informant also provided the detective with a telephone number for the apartment and a description of the building.

Later that week Detective Gulbin and two other officers met with the confidential informant at a prearranged location to conduct a controlled drug purchase. The informant was to go into Apartment A and purchase drugs from Maurice. Prior to allowing the informant to enter the building at 705 Kensington Avenue, the detective searched him and his vehicle. (The informant's gender is not disclosed in the record. For convenience, we will use masculine pronouns when referring to the informant.) After ensuring that the informant did not have any money or drugs, Detective Gulbin gave him money to purchase drugs from Maurice at Apartment A.

The informant, while under the constant surveillance of the officers, drove to the rear parking lot at 705 Kensington Avenue. The officers observed the informant until he entered the building, at which point they lost sight of him. About three minutes after the informant entered the main entrance at 705 Kensington Avenue, Detective Gulbin saw him exit the building. The officers then watched the informant drive to a predetermined location to meet with them. At that point, the informant gave Detective Gulbin vials containing a substance that the officer believed was cocaine. Detective Gulbin also searched the informant and his vehicle a second time, again finding no money or other drugs.

The informant told the police that after entering the building, he walked up three steps and knocked on Apartment A's door, which was on his left-hand side. He stated that the door was tan, with a black "A" affixed to it. The informant explained that after entering the apartment he talked to Maurice about drugs, and then gave Maurice money in exchange for the vials. Subsequent testing by the Union County Prosecutor's Office confirmed that the substance in the vials was cocaine.

The next week Detective Gulbin and another officer met with the informant to carry out a second controlled drug purchase. That second purchase proceeded in the same fashion as the first, with Detective Gulbin first searching the informant and the informant's vehicle. After determining that the informant did not have

any drugs or money, the detective gave him money and maintained constant surveillance of him until he entered the apartment building at 705 Kensington Avenue. About four minutes after the informant entered the building, the officers saw him exit and proceed to a prearranged location. There, the informant gave Detective Gulbin vials containing what the police officer believed was cocaine, and explained that after entering the building he had gone to Apartment A and purchased the vials from Maurice. Again, subsequent testing by the Union County Prosecutor's Office confirmed that the substance in the vials was cocaine.

Detective Gulbin included in the affidavit his efforts to corroborate the informant's tip, which consisted of a review of records from the Public Service Electric and Gas Company (PSE & G). PSE & G's records listed Sonya Sullivan as the subscriber at Apartment A since May 14, 1996. Those records also indicated that the "contact telephone number" for Apartment A was the same number as the one that the informant had given to the detective and had alleged was Maurice's number at the apartment.

Based on those facts, the trial court issued a warrant authorizing the police to search both defendant's person and the apartment. While executing the warrant in October 1996, the police seized cocaine and a handgun. In February 1997, a Union County grand jury charged defendant with third-degree possession of cocaine, third-degree possession of cocaine with intent to distribute, and third-degree possession of cocaine with intent to distribute within a school zone. Defendant also was charged in a separate indictment with second-degree possession of a weapon by a previously convicted person.

Defendant thereafter moved to suppress the evidence seized by the police. The trial court denied defendant's motion, concluding that Detective Gulbin's affidavit established probable cause and that the search warrant was thus valid. Following that ruling, defendant pleaded guilty to second-degree possession of a firearm by a previously convicted person and third-degree possession of cocaine with intent to distribute within a school zone. The court

sentenced defendant to an aggregate sentence of eight years imprisonment with a three-year period of parole ineligibility.

Before the Appellate Division, defendant argued that the evidence against him should have been suppressed because the police lacked probable cause in obtaining the warrant and that he had received an excessive sentence. In an unreported opinion, the panel reversed the trial court's denial of defendant's motion to suppress the evidence, concluding that the detective's affidavit did not support a finding of probable cause to sustain the search. In view of that conclusion, the court did not address defendant's claim in respect of his sentence.

This Court granted the State's petition for certification. 165 *N.J.* 530, 760 *A.*2d 783 (2000). The Court also granted the motion of the Attorney General for leave to appear as *amicus curiae.* (We will refer to the State and the Attorney General collectively as the State.) We now reverse.

## II.

Consistent with the Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution, police officers must obtain a warrant from a neutral judicial officer prior to searching a person's home, unless the search "falls within one of the recognized exceptions to the warrant requirement." *State v. Cooke,* 163 *N.J.* 657, 664, 751 *A.*2d 92 (2000). Before issuing a warrant, the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched. *State v. Laws,* 50 *N.J.* 159, 173, 233 *A.*2d 633 (1967), *cert. denied,* 393 *U.S.* 971, 89 *S.Ct.* 408, 21 *L.Ed.*2d 384 (1968); *State v. Macri,* 39 *N.J.* 250, 256–57, 188 *A.*2d 389 (1963).

Probable cause "eludes precise definition[.]" *Wildoner v. Borough of Ramsey,* 162 *N.J.* 375, 389, 744 *A.*2d 1146 (2000). In general terms, it "means less than legal evidence necessary to

convict though more than mere naked suspicion." *State v. Mark,* 46 *N.J.* 262, 271, 216 *A.*2d 377 (1966). Probable cause exists if at the time of the police action there is "a 'well grounded' suspicion that a crime has been or is being committed." *State v. Waltz,* 61 *N.J.* 83, 87, 293 *A.*2d 167 (1972). There is little or no difference in determining probable cause within the context of an arrest as compared to that of a search. *State v. Smith,* 155 *N.J.* 83, 92, 713 *A.*2d 1033, *cert. denied,* 525 *U.S.* 1033, 119 *S.Ct.* 576, 142 *L.Ed.*2d 480 (1998).

Our jurisprudence characterizes probable cause "as a common-sense, practical standard for determining the validity of a search warrant." *State v. Novembrino,* 105 *N.J.* 95, 120, 519 *A.*2d 820 (1987). The United States Supreme Court has observed:

> Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception." *Brinegar v. United States,* 338 *U.S.* 160, 176, 69 *S.Ct.* 1302, 1311, 93 *L.Ed.* 1879 (1949). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 175, 69 *S.Ct.* at 1310.
>
> [*Illinois v. Gates,* 462 *U.S.* 213, 231, 103 *S.Ct.* 2317, 2328, 76 *L.Ed.*2d 527, 544 (1983) (alteration in original).]

This Court essentially has mirrored that observation:

> Probable cause is a flexible, nontechnical concept. It includes a conscious balancing of the governmental need for enforcement of the criminal law against the citizens' constitutionally protected right of privacy. It must be regarded as representing an effort to accommodate those often competing interests so as to serve them both in a practical fashion without unduly hampering the one or unreasonably impairing the significant content of the other.
>
> [*State v. Kasabucki,* 52 *N.J.* 110, 116, 244 *A.*2d 101 (1968).]

A search based on a properly obtained warrant is presumed valid. *State v. Valencia,* 93 *N.J.* 126, 133, 459 *A.*2d 1149 (1983). When a search is conducted pursuant to a warrant, the defendant has the burden of proving the invalidity of that search, namely, "that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." *Ibid.* In considering such a challenge, "[w]e accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant." *State v. Marshall,* 123 *N.J.* 1,

72, 586 *A.*2d 85 (1991), *cert. denied,* 507 *U.S.* 929, 113 *S.Ct.* 1306, 122 *L.Ed.*2d 694 (1993).

■ In addition to those general tenets, courts have articulated specific guidelines for cases involving police informants. Information provided by an informant may constitute a basis for a finding of probable cause, so long as there is a substantial basis for crediting the information. *State v. Smith, supra,* 155 *N.J.* at 92, 713 *A.*2d 1033. Whether information conveyed by an informant provides a basis for probable cause "is determined by a standard that calls for consideration and analysis of all relevant circumstances." *Ibid.*

The Supreme Court established the totality-of-circumstances test for analyzing informants' tips under the Fourth Amendment in *Illinois v. Gates, supra,* 462 *U.S.* 213, 103 *S.Ct.* 2317, 76 *L.Ed.*2d 527. The Court explained that the issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548. The Court also observed that the duty of a reviewing court is "to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39, 103 *S.Ct.* at 2332, 76 *L.Ed.*2d at 548 (quoting *Jones v. United States,* 362 *U.S.* 257, 271, 80 *S.Ct.* 725, 736, 4 *L.Ed.*2d 697, 708 (1960)) (alteration in original).

■ We previously adopted *Gates*'s totality-of-circumstances test to evaluate the validity of warrants under Article I, paragraph 7 of the New Jersey Constitution. *State v. Novembrino, supra,* 105 *N.J.* at 122, 519 *A.*2d 820. As noted, under that test, courts consider an informant's veracity and his or her basis of knowledge to be the two most important factors in evaluating the informant's tip. *State v. Smith, supra,* 155 *N.J.* at 93, 713 *A.*2d 1033. "A deficiency in one of those factors 'may be compensated for, in determining the overall reliability of a tip, by a strong showing as

to the other, or by some other indicia of reliability.' " *State v. Zutic*, 155 *N.J.* 103, 110–11, 713 *A.2d* 1043 (1998) (citation omitted). Further, we have stressed that a factor, "though insufficient if considered in isolation, may in combination reinforce or augment [ ] another and become sufficient to demonstrate probable cause." *Id.* at 113, 713 *A.2d* 1043.

■ In respect of the first factor, an informant's veracity, we have stated that past instances of the informant's reliability are "probative of veracity, although [their] weight in the ultimate determination of probable cause may vary with the circumstances of each case." *State v. Smith, supra*, 155 *N.J.* at 94, 713 *A.2d* 1033. An informant's veracity may be shown by demonstrating that the informant proved to be reliable in previous police investigations. *State v. Novembrino, supra*, 105 *N.J.* at 123, 519 *A.2d* 820. However, under the totality of the circumstances, "past instances of reliability do not conclusively establish an informant's reliability." *State v. Smith, supra*, 155 *N.J.* at 94, 713 *A.2d* 1033.

The second factor, whether the informant had a basis of knowledge for the information provided to the police, "is relevant to a determination that the information was obtained in a reliable way." *Ibid.* An informant's basis of knowledge can be "disclosed by the informant if the tip itself relates expressly or clearly how the informant knows of the criminal activity." *Ibid.* In the absence of such explicit disclosure, "the nature and details revealed in the tip may imply that the informant's knowledge of the alleged criminal activity is derived from a trustworthy source." *Ibid.* The Court has reasoned that "[b]y providing sufficient detail in the tip or recounting information that could not otherwise be attributed to circulating rumors or be easily gleaned by a casual observer, an informant can implicitly disclose a reliable basis of knowledge as the foundation of the information related to the police." *Id.* at 95, 713 *A.2d* 1033.

■ Because the information contained in a tip is hearsay, police corroboration of that information "is an essential part of the determination of probable cause." *Ibid.* In that regard, "the

informant's veracity, if inadequately documented in the officer's affidavit, could be bolstered by a corroborative investigation[.]" *State v. Novembrino, supra,* 105 *N.J.* at 113, 519 *A.*2d 820. *See also State v. Smith, supra,* 155 *N.J.* at 98, 713 *A.*2d 1033 (observing that when "the tip lacks sufficient detail to establish a basis of knowledge, independent police investigation and corroboration of the detail in the tip must be considered because it may in some circumstances add to the evidentiary weight of factors as well as the overall circumstances"). In the same vein, "if police corroborate 'information from which it can be inferred that the informant's tip was grounded on inside information, this corroboration is sufficient to satisfy the basis of knowledge prong' as well as the veracity prong." *Id.* at 95–96, 713 *A.*2d 1033 (citations omitted).

### III.

With those principles in mind, we turn to the case at hand. Defendant acknowledges in his brief that the basis of the informant's knowledge "is not in issue in this case," and thus devotes most of his argument to the question concerning the informant's veracity or trustworthiness. Accordingly, our review of whether the issuing court had a substantial basis for concluding that probable cause existed focuses primarily on the informant's veracity, as well as any other relevant circumstances, including police corroboration of the informant's tip.

In respect of the veracity factor, the informant had no apparent history of providing reliable or trustworthy information to the police. Detective Gulbin's affidavit did not indicate that he had worked with this informant previously. Rather, the affidavit stated that the informant's "reliability [had] been established during the course of this investigation in that [the informant] made two successful controlled purchases of cocaine." Under those circumstances, we must examine the police corroboration of the informant's tip and review whether that corroboration demonstrated that the informant was sufficiently reliable.

The facts surrounding the controlled buys are relevant in analyzing the police corroboration of the informant's tip. Until today,

this Court has not had the opportunity to discuss the role that a controlled drug purchase may play in the probable-cause determination. Other jurisdictions permit such purchases to form the basis of probable cause. For example, the Supreme Judicial Court of Massachusetts has explained:

"A controlled purchase of narcotics, supervised by the police, provides probable cause to issue a search warrant." Generally, a "controlled buy" has, at a minimum, these components: (1) a police officer meets the informant at a location other than the location where [it is] suspected that criminal activity is occurring; (2) the officer searches the informant to ensure the informant has no drugs on his person and (usually) furnishes the informant with money to purchase drugs; (3) the officer escorts or follows the informant to the premises where it is alleged illegal activity is occurring and watches the informant enter and leave those premises; and (4) the informant turns over to the officer the substance the informant has purchased from the residents of the premises under surveillance.

[*Commonwealth v. Desper*, 419 *Mass.* 163, 643 *N.E.*2d 1008, 1011 (1994) (citation omitted).]

*See also Mills v. State*, 177 *Ind.App.* 432, 379 *N.E.*2d 1023, 1026 (1978) (outlining similar steps of controlled buy).

We accept the *Desper* Court's description of a controlled buy as generally reflective of the practices followed by the police when undertaking such action. Here, the controlled buys fell within that description, except that the police did not observe the informant enter Apartment A. Defendant considers that failure by the police to be fatal to their showing of probable cause. More specifically, defendant contends that the controlled buys were "not conducted in a manner that would provide probable cause, because the police were unable to attest to the source of the cocaine provided by the informant."

In contrast, the State argues that the controlled buys in this case, standing alone and without further police corroboration, established probable cause to believe that illegal activity was occurring at Apartment A. The State claims that the informant's drug purchases served to corroborate his tip, and that the police supervision of the informant further bolstered his credibility. The State asserts that it would have been impractical for the police to observe the informant enter defendant's apartment given the fact that Apartment A was part of a multi-unit building. Additionally,

the State contends that even if the controlled buys standing alone were insufficient to establish probable cause, the further police corroboration of the tip satisfied that standard.

 We are persuaded that the additional police corroboration in this case helped to demonstrate probable cause. That additional corroboration included (1) the detective's review of the PSE & G records, which verified that (a) the telephone number that the informant had provided to the detective matched the telephone number of Apartment A and (b) the apartment's utilities had been activated prior to June 1996 when, according to the informant, defendant began selling drugs from that location; and (2) the confirmation that the substance purchased by the informant was cocaine. Those facts served as sufficient indicia of the informant's reliability. That the informant was able to provide a detailed description of defendant and the apartment building furthered the reasonableness of the police in conducting the controlled drug buys in the first instance. When coupled with the completion of those buys, the corroboration described in the applying officer's affidavit formed a well-grounded basis to support the warrant.

The fact that the police were unable to observe the informant enter Apartment A itself does not prevent a finding of probable cause. Rather, the inability of the police in that regard is one factor to be considered by the issuing judge under the totality-of-circumstances test. *See also Desper, supra,* 643 *N.E.*2d at 1012–13 (finding probable cause within context of controlled buy even though police did not observe informant enter specific apartment). We expect that the police will continue to corroborate as much of an informant's tip as possible prior to seeking a search warrant and will not rely exclusively on controlled drug buys.

 Along those lines, we reject the State's suggestion that a controlled drug buy conclusively establishes probable cause. Such a *per se* rule would be antithetical to our probable cause jurisprudence. As indicated, courts must consider the totality of the circumstances, without focusing exclusively on any one factor, in considering whether probable cause has been established. See

*State v. Kasabucki, supra,* 52 *N.J.* at 117, 244 *A.*2d 101 (noting that "no mathematical formula exists for application either by a trial or appellate court in deciding whether a search warrant was supported by probable cause"). To be sure, a controlled drug buy typically will be persuasive evidence in establishing probable cause. Nonetheless, in undertaking the fact-sensitive inquiry required in this setting, a judge also must consider other factors, such as the reliability of the informant, before issuing a warrant. *Accord United States v. Khounsavanh,* 113 *F.*3d 279, 285 (1st Cir.1997) (rejecting contention that controlled drug buy is *per se* sufficient to establish probable cause).

In sum, we have been presented with no grounds to suppress the evidence or set aside defendant's conviction. The warrant application satisfied the applicable federal and State tests for establishing probable cause. The two controlled drug purchases, as well as the additional police corroboration of the informant's tip, sufficiently demonstrated probable cause. We thus agree with the trial court that the State presented a sufficient basis to obtain the warrant. Under the totality of the circumstances, defendant has not defeated the warrant's presumption of validity or demonstrated the unreasonableness of the police conduct.

Our holding is guided by the flexible nature of probable cause and by the deference shown to issuing courts that apply that doctrine. As we have noted in other contexts, warrant applications "should be read sensibly rather than hypercritically and should be deemed legally sufficient so long as they contain[ ] factual assertions which would lead a prudent [person] to believe that a crime [has] been committed and that evidence ... of the crime [is] at the place sought to be searched." *State v. Laws, supra,* 50 *N.J.* at 173, 233 *A.*2d 633. Under that standard, the warrant application here was legally sufficient.

## IV.

The judgment of the Appellate Division is reversed. The matter is remanded to that court for resolution of defendant's sentencing claim.

218

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, VERNIERO, LaVECCHIA and ZAZZALI—6.

*Opposed*—None.