**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0030-19T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ISIAH C. COOPER, a/k/a
ISAIAH COOPER, and
ISAIH C. COOPER,

     Defendant-Appellant.

_____

Submitted October 19, 2020 – Decided November 20, 2020

Before Judges Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-01-0147.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Mario C. Formica, Deputy First Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Isiah Cooper appeals from the judgment of conviction entered by the Law Division on June 20, 2019. On appeal, he challenges the January 30, 2019 trial court decision denying his motion to suppress evidence seized, pursuant to two search warrants, from a residence and a vehicle. We affirm.

I.

The following facts are set forth in two affidavits of Detective Chad Meyers of the Atlantic County Prosecutor's Office (ACPO). In early December 2016, a confidential informant (the CI) provided Detective Meyers with information about an unidentified black male known as "Money," who was distributing heroin and cocaine in the South Chester Avenue area of Pleasantville. The CI had provided reliable information to law enforcement in the past, leading to arrests and convictions of individuals for controlled dangerous substance (CDS) and weapons-related offenses.

Detective Meyers shared this information with Officer VanSyckle of the Street Crimes Unit of Pleasantville Police Department (the PD). Based on this information and his personal knowledge of the Pleasantville CDS trade, Officer VanSyckle believed "Money" was Umar Salahuddin, who was known to distribute CDS from defendant's residence (the residence) in Pleasantville.

During the week of December 11, 2016, the ACPO, the FBI, and the PD launched a joint operation to purchase CDS from Salahuddin. Accordingly, the CI called Salahuddin to purchase heroin and crack cocaine around Franklin and West Jersey Avenues.

Meanwhile, Officer VanSyckle, who was surveilling the residence, advised radio communication that Salahuddin and defendant had exited the residence, entered a 2003 Mercedes-Benz C-Class Wagon, and drove to the area of Franklin Avenue and West Jersey Avenues. Other officers then observed Salahuddin complete the transaction with the CI in the presence of defendant, who was in the front passenger seat of the Mercedes-Benz.

During the weeks of January 15 and 22, 2017, law enforcement conducted two additional transactions. Both times, Salahuddin was observed exiting the residence, driving to a pre-determined location, and selling CDS to the CI; however, on these two occasions defendant was not present.

During the week of February 5, 2017, law enforcement conducted a fourth transaction. The CI again called Salahuddin, who told the CI he was waiting for a CDS delivery and would meet afterward. Shortly thereafter, Officer VanSyckle advised radio communication that a black Dodge truck had just parked across the street from the residence. Officer VanSyckle observed

A-0030-19T1

Salahuddin exit the residence, enter the front passenger side of the truck, exit the truck, and re-enter the residence; when Salahuddin exited the truck, his jacket pockets appeared "weighed down by some sort of object(s) not present prior to him entering" the truck. "Several moments later," Salahuddin told the CI that he received the CDS delivery but called off the transaction due to heightened police presence.

On February 27, 2017, officers observed defendant driving the same Mercedes-Benz involved in the December 11, 2016 transaction to the residence. There, personnel observed defendant briefly enter and exit the residence. Galloway Township Detective Casey subsequently observed defendant drive to a nearby Dollar Tree parking lot, where he engaged in a hand-to-hand transaction with a driver of another car. Soon thereafter, Detective Casey stopped the other driver, identified as Sherri Healey, who admitted she bought heroin at the Dollar Tree parking lot.

On March 10, 2017, Judge Donna Taylor issued a search warrant for the residence based on an affidavit submitted by Detective Meyer. Officers executed the warrant on March 16, 2017, and recovered substantial quantities of CDS and multiple handguns from the residence.

4

During the search, police had observed a white 2006 Pontiac Grand Prix (the vehicle) outside the residence. During the investigation, police observed defendant

> entering and exiting the vehicle . . . parked outside the residence. After entering the vehicle officers observed [defendant] exit the vehicle and move away from the car, on foot, to [the residence]. On these occasions, [defendant] remained in the vehicle for short periods of time only.

Following the search of the residence, Pleasantville K-9 Unit Patrolman Laielli used Chewbacca, his K-9 partner, to conduct a dog-sniff of the vehicle. Chewbacca gave positive indications for CDS in the front interior and trunk of the vehicle. Police then towed the vehicle to a secure location, where it remained locked.

On March 23, 2017, Judge Michael Blee issued a search warrant for the vehicle based on a second affidavit submitted by Detective Meyer. In the search, police recovered substantial contraband, including handguns and ammunition from the vehicle.

On January 25, 2018, an Atlantic County grand jury returned an indictment charging defendant with: first-degree gang criminality, N.J.S.A. 2C:33-29 (count one); second-degree conspiracy to distribute heroin and/or cocaine while in possession of guns, N.J.S.A. 2C:5-2, 35-5(b)(2) and/or 39-4.1

5

(count two); third-degree conspiracy to distribute heroin and/or cocaine, and/or financial facilitation of criminal activity, N.J.S.A. 2C:5-2, 35-5(b)(2) and/or 21-25 (count three); third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25 (count four); third-degree possession of crack cocaine, N.J.S.A. 2C:35-10(a)(1) (counts five and sixty); third-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) (count six); third-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) (count seven); third-degree possession of heroin, N.J.S.A. 2C:35-10a(1) (counts fifty-five and fifty-eight); third-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 35-5(b)(3) (count fifty-six and fifty-nine); third-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1); second-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(b)(2) (count sixty-one); second-degree distribution of heroin, N.J.S.A. 2C:35-5(b)(2) (count sixty-two); first-degree distribution of cocaine, N.J.S.A. 2C:35-5b(1) (count sixty-three); first-degree maintaining or operating a drug-production facility, N.J.S.A. 2C:35-4 (count sixty-four); second-degree conspiracy to maintain or operate a drug-production facility, N.J.S.A. 2C:5-2 and 35-4 (count sixty-five); second-degree possession of a firearm while committing a drug crime, N.J.S.A. 2C:39-4.1(a) (counts sixty-six, sixty-seven, seventy, and seventy-one); second-degree possession of a

6

firearm without a permit, N.J.S.A. 2C:39-5(b) (count sixty-eight); second-degree possession of an assault firearm, N.J.S.A. 2C:39-5(f) (count sixty-nine); fourth-degree possession of a large-capacity magazine, N.J.S.A. 2C:39-3(j) (counts seventy-two, seventy-three, seventy-four, and seventy-five); fourth-degree possession of hollow-point ammunition, N.J.S.A. 2C:39-3(f) (count seventy-six); fourth-degree possession of handgun ammunition without a firearms purchaser identification card or permit, N.J.S.A. 2C:58-3.3(b) (count seventy-seven); second-degree certain persons not to have a handgun, N.J.S.A. 2C:39-7(b) (counts seventy-eight, seventy-nine, eighty, and eighty-one); and fourth-degree certain persons not to have a weapon, N.J.S.A. 2C:39-7(a) (counts eighty-two, eighty-three, eighty-four, and eighty-five).

On January 30, 2019, defendant appeared before Judge Rodney Cunningham on a motion to suppress evidence seized from the residence and vehicle. After hearing argument, the judge denied the motion, finding law enforcement established probable cause for the issuance of the warrants and reasonably believed all the information in the affidavits was true.

Pursuant to a plea agreement, on June 19, 2019, Judge Cunningham sentenced defendant to two concurrent terms: a five-year term on the conspiracy charge contained in count three and a ten-year term, with a five-year period of

7

parole ineligibility, on counts sixty-two (distribution of heroin) and an amended count seventy-one (possession of a community gun).

Defendant then filed this appeal, presenting the following arguments:

POINT I

BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT WAS NOT BASED ON PROBABLE CAUSE TO BELIEVE THAT CONTRABAND WOULD BE FOUND IN THE HOME THAT WAS THE SUBJECT OF THE WARRANT, THE SEARCH WAS UNCONSTITUTIONAL, AND THE EVIDENCE SEIZED MUST BE SUPPRESSED.

POINT II

BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FAILED TO ESTABLISH THAT THE POLICE DOG AND HIS HANDLER HAD BEEN ADEQUATELY TRAINED IN DRUG DETECTION, IT FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH COOPER'S VEHICLE.

II.

The Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution similarly protect against unreasonable searches and seizures, and no warrant shall issue except upon probable cause. Unless a search falls within one of the recognized exceptions to the warrant requirement, the police must first obtain a warrant. State v.

8

Sullivan, 169 N.J. 204, 210 (2001) (citing State v. Cooke, 163 N.J. 657, 664 (2000)). "Before issuing a warrant, the judge must be satisfied that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched." Ibid. (citing State v. Laws, 50 N.J. 159, 173 (1967)).

Probable cause is "consistently characterized . . . as a common-sense, practical standard for determining the validity of a search warrant." State v. Novembrino, 105 N.J. 95, 120 (1987). Generally, courts accept probable cause to mean "less than legal evidence necessary to convict though more than mere naked suspicion." Sullivan, 169 N.J. at 210-11 (quoting State v. Mark, 46 N.J. 262, 271 (1966)). It is met when police have "a 'well-grounded' suspicion that a crime has been or is being committed." Ibid. (quoting State v. Waltz, 61 N.J. 83, 87 (1972)).

Courts must base a probable cause determination on the totality of the circumstances. State v. Jones, 179 N.J. 377, 389 (2004) (citing Schneider v. Simonini, 163 N.J. 336, 361 (2000)). Courts must also apply a qualitative analysis to the unique facts and circumstances of any given case. State v. Keyes, 184 N.J. 541, 556 (2005) (citing Jones, 179 N.J. at 390). "[W]hether or not probable cause exists 'involves no more than a value judgment upon a factual

9

complex rather than an evident application of a precise rule of law, and indeed a value judgment which inevitably reflects the seasoning and experience of the one who judges.'" Schneider, 163 N.J. at 362 (quoting State v. Funicello, 60 N.J. 60, 72-73 (1972) (Weintraub, C.J., concurring)).

Therefore, we give "substantial deference" to the trial court's determination. State v. Kasabucki, 52 N.J. 110, 117 (1968). Our review of a warrant's adequacy "is guided by the flexible nature of probable cause and by the deference shown to issuing courts that apply that doctrine." Sullivan, 169 N.J. at 217. "[W]hen the adequacy of the facts offered to show probable cause is challenged after a search made pursuant to a warrant, and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." Jones, 179 N.J. at 388-89 (quoting Kasabucki, 52 N.J. at 116). Accordingly, a search executed pursuant to a warrant is presumed valid, and the defendant bears the burden of proving lack of probable cause in the warrant application. Sullivan, 169 N.J. at 211 (citing State v. Valencia, 93 N.J. 126, 133 (1983)).

Applying these standards, we conclude Judge Cunningham did not abuse his discretion when he denied defendant's motion to suppress the evidence seized from the residence. On four separate occasions, law enforcement

observed defendant and/or Salahuddin leave the residence to sell CDS, without stopping at a third location in between. Furthermore, shortly after Salahuddin told the CI he was awaiting a CDS delivery, law enforcement observed Salahuddin bring what appeared to be heavy objects into the residence. Moments later, Salahuddin told the CI he received the CDS delivery. Based on the totality of the circumstances, law enforcement had probable cause to believe Salahuddin and defendant were storing contraband or other relevant evidence in the residence.

Similarly, we conclude Judge Cunningham did not abuse his discretion in denying defendant's motion to suppress the evidence seized from the vehicle. Our analysis of probable cause arising from K-9 sniffs looks to "whether all the fact surrounding the dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." Florida v. Harris, 568 U.S. 237, 248 (2013). Here, in addition to positive indications on the car from the dog sniff, law enforcement observed defendant on multiple occasions leave the residence, enter and exit the vehicle, and return to the residence; each time, he remained in the vehicle for only short periods of time. The vehicle was parked outside of the residence, where police already seized substantial quantities of CDS and

multiple handguns connected to defendant's apparent criminal activity. In addition, the record contains no evidence to suggest the dog was not trained or reliable. Based on the totality of the circumstances, law enforcement had probable cause to believe the vehicle contained contraband and evidence of criminal activity.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION