**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4589-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL C. GRAY,

     Defendant-Appellant.

_____

Submitted February 8, 2021 – Decided October 14, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 18-08-1968.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Frank Muroski, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Michael C. Gray appeals from the May 23, 2019 Judgment of Conviction, following his guilty plea under Indictment 18-08-1968 to third-degree possession with intent to distribute a controlled dangerous substance (CDS) (heroin), N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). He alleges the trial court erred by denying his motion to suppress evidence on grounds that the motor vehicle stop and his arrest were unconstitutional. We affirm the judgment and the order denying defendant's motion to suppress evidence substantially for the reasons set forth by Judge David M. Ragonese in his written opinion.

I.

On August 16, 2018, defendant was indicted along with four others in a multi-count indictment. His charges included third-degree possession of CDS (heroin) (Count Eleven), N.J.S.A. 2C:35-10(a)(1); third-degree possession with intent to distribute CDS (heroin) (Count Twelve), N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(3); and second-degree certain persons not to have weapons (Count Fourteen), N.J.S.A. 2C:39-7(b)(1). Following the denial of his motion to suppress on March 14, 2019, defendant pleaded guilty to Count Twelve.

2

Count Eleven was dismissed.[1] Defendant was sentenced to a two-year term of non-custodial probation subject to conditions, statutory fines, and penalties.

The facts are based on the record from the suppression hearing and as the parties stipulated. Detective Mathew DiDomenico testified that on February 25, 2018, he was working for the Camden County Police Department assigned to the Narcotics and Gang Unit. He was part of an undercover investigation of an individual known as Jamal Parker. DiDomenico testified that Parker used a cell phone to make sales of CDS. As part of the investigation, a confidential informant (CI) first made a "controlled purchase" of CDS from Parker. For the second purchase, the CI introduced Parker to an undercover detective, Detective Fesi. After that, the Detective Fesi made additional controlled CDS purchases.

DiDomenico testified the investigation revealed "there were other people involved in this [drug] operation revolving around this same cell phone number." Derek Stephens was one of the distributors who used the cell phone. Additional controlled purchases were made throughout March 2018. All the purchases were made using the same cell phone number.

---

[1] Count Fourteen was dismissed based on a motion by defendant that the State did not oppose.

A-4589-18

A decision was made to begin making arrests. On March 28, 2019, using the cell phone, Detective Fesi contacted Stephens to make a purchase. Stephens arranged to meet at a McDonald's they used previously. DiDomenico and another detective parked in an unmarked vehicle in the Little Caesars' parking lot, which faced the McDonald's lot. They were wearing clothing that showed a police logo, which was visible by someone looking into the vehicle.

DiDomenico testified that Stephens was driving a Nissan Altima and parked next to their vehicle. He was arrested and found to be in possession of $752. Detective Fesi made a "confirmatory call" to the cell phone number that was being used but it was not with Stephens, and an unidentified male answered. Detective Fesi wanted to complete the purchase. After asking how much money the undercover detective had, the male confirmed he was on his way in a black Nissan Altima.

DiDomenico testified an older model silver Infiniti vehicle pulled into the Little Caesars' lot and parked next to them. The windows in that car were fully tinted. No one got out for about five minutes, and then two men emerged, going into the McDonald's. After ten minutes, they came out with a bag of food and drove out of the parking lot. DiDomenico recorded the vehicle's license number.

4

Detective Fesi texted the cell phone number, asking the unknown male where he was. In a return call, the unidentified male advised there was a police presence at the McDonald's, he left and was going to another location — the Auto Zone parking lot — and that he was driving an Infiniti. DiDomenico followed, stopping the silver Infiniti and arresting the two occupants, including defendant.

In a search following his arrest, defendant was found in possession of sixty-eight wax folds containing probable heroin. The police called the cell phone number. A flip-phone in the Infiniti began to ring and was seized. A K-9 exterior sniff of the vehicle indicated there were more narcotics in the car, which then was secured and towed pending a search warrant.

On March 14, 2019, Judge Ragonese denied defendant's motion to suppress evidence. The court found that "probable cause crystalized for the arrest of the occupants of the silver Infiniti" at the moment when the unknown male advised he was driving an Infiniti and had left McDonald's because of a police presence. In his written decision, the court "[found] both the motor vehicle stop and arrest of defendants were supported by probable cause." The court considered the "detectives' expertise in these types of investigations" and "the facts they had developed over the course of one month," in concluding

5

they "had a well-grounded suspicion that the occupants in the Infiniti had come to the McDonald's parking lot to sell heroin." The trial court also found defendant's search after his arrest that "yielded sixty-eight blue wax folds" purporting to be heroin and the seizure of the cell phone were all justified under the search incident to arrest exception.[2]

On appeal, defendant raises these issues:

> POINT I
>
> THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I, PAR. 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED BY THE ARREST AND SEARCH OF THE DEFENDANT WITHOUT PROBABLE CAUSE.
>
> POINT II
>
> THE DEFENDANT IS ENTITLED TO DE NOVO REVIEW, AND NO DEFERENCE SHOULD BE GIVEN TO THE ERRONEOUS CONCLUSION BELOW.

---

[2] Defendant argues that any evidence seized after his arrest must be suppressed because there was no probable cause for the motor vehicle stop or his arrest. He does not directly challenge the search incident to arrest in this appeal. Because this issue was not raised in his merits brief, we deem it waived. Gormley v. Wood-El, 218 N.J. 72, 95 n.8 (2014).

A-4589-18

II.

Defendant argues the Infiniti was stopped without a reasonable suspicion, and there was no probable cause for his arrest. He contends he was not part of the previous controlled drug buys, the description of the vehicle on the phone (Altima) did not match the vehicle at the scene (Infiniti), there was no corroboration at the scene to initiate his arrest, and the police relied on an anonymous tip to stop the Infiniti.

Our review of the denial of a suppression motion is limited. State v. Handy, 206 N.J. 39, 44 (2011). "When reviewing a trial court's decision to grant or deny a suppression motion, [we] 'must defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'" State v. Dunbar, 229 N.J. 521, 538 (2017) (quoting State v. Hubbard, 222 N.J. 249, 262 (2015)). "We will set aside a trial court's findings of fact only when such findings 'are clearly mistaken.'" Ibid. (quoting Hubbard, 222 N.J. at 262). "We accord no deference, however, to a trial court's interpretation of law, which we review de novo." Ibid. (quoting State v. Hathaway, 222 N.J. 453, 467 (2015)).

Both the Federal and State constitutions protect citizens against unreasonable searches and seizures. U.S. Const. amend. IV; N.J. Const. art. I,

A-4589-18

¶ 7. "An arrest without probable cause is an unreasonable seizure in violation of both the Federal and State Constitutions." State v. Gibson, 218 N.J. 277, 281 (2014).

The standards for determining probable cause to arrest and probable cause to search are identical. State v. Smith, 155 N.J. 83, 92 (1998). "Probable cause exists if at the time of the police action there is 'a well-grounded' suspicion that a crime has been or is being committed." State v. Sullivan, 169 N.J. 204, 211 (2001) (quoting State v. Waltz, 61 N.J. 83, 87 (1972)). A court must consider whether the totality of the facts and circumstances presented to the arresting officer would support "a [person] of reasonable caution in the belief that an offense has been or is being committed." State v. Sims, 75 N.J. 337, 354 (1978) (quoting Draper v. U. S., 358 U.S. 307, 313 (1959)).

"Probable cause requires 'a practical, common-sense decision whether, given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Demeter, 124 N.J. 374, 380-81 (1991) (quoting Ill. v. Gates, 462 U.S. 213, 238 (1983)). An officers actions must be considered in light of "the specific reasonable

inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. 1, 27 (1968).

We agree with the trial judge there was probable cause to stop the Infiniti and arrest its occupants, including defendant. The month-long investigation revealed that one phone number was being used by more than one person to sell drugs. On March 28, 2019, the phone was used to set-up a drug purchase at a specific McDonald's. This location had been used in the past in this investigation. Stephens — a known distributor — came to the McDonald's based on a call to the cell phone number. He was arrested. Shortly after, the detective called the cell phone again and arranged a buy at the same location. This time, an Infiniti with fully tinted windows arrived and parked next to the police. After the occupants purchased food, they left and the police texted the cell phone number. The same male voice called back indicating he was moving the location because of a police presence at the McDonald's and he was in a silver Infiniti. This validated his location and use of the cell phone, that he had left the McDonald's and identified the vehicle he was using. The Infiniti that had been in the McDonald's was then stopped and the occupants were arrested.

A-4589-18

Although each of these facts standing alone may be insufficient, when combined, we are satisfied under the totality of the circumstances, that they "reinforce or augment one another and become sufficient to demonstrate probable cause." State v. Zutic, 155 N.J. 103, 113 (1998) (citing Gates, 462 U.S. at 233). Probable cause requires only "a fair probability" of criminality. State v. Johnson, 171 N.J. 192, 214 (2002) (quoting Demeter, 124 N.J. at 380-81).

Defendant treats the stop and arrest in isolation from their context. The vehicle was not stopped for a motor vehicle violation. The vehicle was stopped and the occupants arrested because the police had a well-founded suspicion the occupants were involved in the drug distribution ring under investigation.

The probable cause to stop in this case was that the Infiniti came to the same McDonald's after contact was made to the cell phone used by the drug ring, left because of a police presence, identified that the seller was driving an Infiniti, and arranged another location for the sale. Defendant was an occupant of the vehicle. It was not necessary for defendant to have been identified previously in the investigation in order to arrest him. On-scene corroboration also was not needed because his arrest was not simply based on an informant's

tip. See Sullivan, 169 N.J. at 213 (providing that because "a tip is hearsay, police corroboration of that information 'is an essential part of the determination of probable cause'" (quoting Smith, 155 N.J. at 95)).

It was not determinative of the probable cause issue that the caller said he would be in a black Altima but the vehicle stopped was an Infiniti. DiDomenico testified that drug dealers commonly did this to avoid detection.

The court did not err by considering the police officer's "common and specialized experience." Schneider v. Simonini, 163 N.J. 336, 362 (2000) (quoting State v. Contursi, 44 N.J. 422, 431 (1965)). Although DiDomenico was not qualified to offer an expert opinion on this issue, his testimony was based on his personal observations and experience. See N.J.R.E. 701 (providing "[i]f a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it (a) is rationally based on the perception of the witness; and (b) will assist in understanding the witness' testimony or determining a fact in issue.").

Defendant's arrest was not made based on an anonymous tip — in this case the unknown male voice who answered the phone. The cell phone that the unknown voice answered was being used for multiple drug sales. The person who answered confirmed his location, the police presence and vehicle

type.   All the facts combined to provide the police with a well-grounded suspicion that the Infiniti and its occupants were part of the drug distribution ring centered around a single cell phone number.   The vehicle was stopped, and the occupants arrested on that basis.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4589-18