**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0793-22

IN THE MATTER OF THE
SEIZURE OF PROPERTY
BELONGING TO M.G.

_____

Argued November 15, 2023 – Decided December 7, 2023

Before Judges Currier and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. G-0011-22.

Blair R. Zwillman argued the cause for appellant M.G.

Michelle Resha Jeneby, Senior Assistant Prosecutor, argued the cause for respondent State of New Jersey (Christine A. Hoffman, Acting Gloucester County Prosecutor, attorney; Michelle Resha Jeneby, on the brief).

PER CURIAM

M.G.[1] appeals from an October 25, 2022 order denying his motion for return of his property—an Apple laptop computer seized from his residence. He

---

[1] We follow the practice of the trial court by using initials to refer to appellant and others identified in the opinion.

also appeals from a November 4, 2022 order compelling disclosure of the laptop's passcode.[2]  We affirm both orders.

I.

The following facts are derived from the motion record.  Based upon an anonymous tip, the Glassboro Police Department, in conjunction with other municipal, state, and federal agencies, launched an investigation regarding an organized narcotics distribution ring and marijuana distribution facility located in East Greenwich Township known as Green Collective NJ, LLC (Green Collective).  M.G.'s son B.G. is the president and 49% owner of the business.  M.G. owns 51% of the business.  Law enforcement suspected B.G. was involved in a narcotics distribution scheme.  Green Collective listed its address as M.G.'s single-family home  Therefore, the State reasoned M.G. had a connection to B.G.'s narcotics distribution plan.

C.A. was the purported leader of the narcotics ring.  He shipped narcotics to his customers worldwide via the United States Postal Service.  The investigation revealed C.A. and B.G. used social media accounts and financial platforms to promote their marijuana distribution business.  This information

---

[2]  The record uses the terms "passcode" and "password" interchangeably.  We use "passcode" in our opinion.

was independently corroborated after a motor vehicle stop involving M.M, who told the investigating officers that C.A. and B.G. were operating a narcotics distribution ring.

Detective Sean Aitken of the Glassboro Police Department submitted a certification for the issuance of search warrants for four residences, including M.G.'s home, and two vehicles. In his certification, Detective Aitken stated he had probable cause to believe that evidence of certain crimes would be found at the residences and in the vehicles pertaining to an "organized narcotics distribution ring."

Detective Aitken certified that the execution of search warrants at multiple residences in Glassboro resulted in the "seizure of approximately $60,000, weapons, and various forms of distribution amounts of narcotics" resulting in charges against fourteen individuals. Detective Aitken indicated that communication data warrants (CDWs) were issued by the court for bank accounts, a PayPal account, a Venmo account, Instagram accounts, and cellular phone records for C.A., B.G. and his girlfriend, and other individuals.

Detective Aitken certified that the CDWs issued for Instagram resulted in the "reception of numerous conversations" involving B.G. and C.A. discussing the purchase and sale of narcotics, acquisition of proceeds through "illicit

A-0793-22

means," and their conspiring to "deliberately underreport" and "omit" financial transactions to avoid paying income taxes. Specifically, Detective Aitken stated between July 1, 2020, and February 23, 2021, B.G. "received $223,408.04, sent $172,583.23, and withdrew only $39,599.54 through his Venmo account." From January 1, 2017, to the date of his certification, Detective Aitken stated B.G. received $102,510.65 and sent $81,471.43 through his PayPal account. According to Detective Aitken, B.G. claimed $45,417 of income on his 2020 tax returns and stated his address was M.G.'s home. Detective Aitken certified that Green Collective claimed a $932 loss on its 2020 income tax returns.

In an Instagram conversation between B.G. and C.A., Detective Aitken certified that B.G. stated "these . . . unpaid taxes [are] coming back to haunt us," and mentioned having to go "big" on taxes in a given year to "look good for a legal marijuana grow" he was trying to establish. According to Detective Aitken, B.G. "told numerous subjects" to "make sure their financial transactions are not over $10,000 . . . ." Detective Aitken stated B.G. claimed he was leasing a property that he intended to buy with cash having a listing price of $565,000, and B.G. is selling narcotics paraphernalia to raise money for the purchase.

Based upon his training and experience, Detective Aitken opined that B.G., his girlfriend, and C.A. conspired to commit financial crimes, not pay

4

taxes, filed fraudulent tax returns, and committed narcotic-related crimes, specifically the distribution of "illegal" amounts of marijuana in violation of N.J.S.A. 2C:1-1 to -104-9. Consequently, a search warrant was requested to search M.G.'s residence for financial records, various social media accounts, Venmo and PayPal records, checks, real estate transaction records, and other items. The court granted the application for the search warrant.

During the search of M.G.'s residence, law enforcement seized his Apple laptop, which is the subject of the matter under review.[3] M.G. filed a motion for return of his laptop on the grounds it had no nexus to criminal activity and: (1) he is not named as a participant in any illegal activity; (2) there is no assertion that contraband was sent to or from his residence; (3) there is no evidence his residence was used as a marijuana grow facility; (4) the potential licensed facility was not intended to be his residence; (5) none of his financial accounts are alleged to be involved in criminal activity; (6) there is no indication M.G. knew what his son B.G. was doing; and (7) none of the previous subpoenas involved him.

---

[3] The State returned nine other items to M.G., which are not at issue in this appeal.

A-0793-22

The State countered it had probable cause to search and seize M.G.'s laptop based on the Purchase and Sale Agreement (Agreement) confirming the address of Green Collective as M.G.'s residence; the purchase price of the business—$400,000; and M.G. being the majority 51% owner of the business and B.G. the 49% owner. The State maintained it was continuing its investigation and evidence of possible criminal activity was stored in M.G.'s laptop pertaining to the manufacturing and distribution of marijuana without a license in New Jersey; the illegal purchase of a property for use as a marijuana production facility acquired through the sale of contraband; and possible tax evasion by M.G. and B.G. The State argued M.G. "has absolute knowledge of what [B.G.] is doing with the business" and that M.G.'s laptop contained information regarding his son's actions.

On October 13, 2022, the court conducted oral argument on M.G.'s motion. Following arguments that day, the court rendered an oral decision finding the State established probable cause to seize M.G.'s laptop. The court noted the State was continuing its criminal investigation against B.G. regarding possible tax evasion, proceeds from marijuana sales, and production of marijuana for sales without a license. The court also ordered M.G. to provide his laptop passcode. The court also implemented procedures to guard

6

confidential protected material that might be on the laptop. The court stayed the orders pending our decision. This appeal followed.

M.G. presents the following arguments for our consideration:

POINT [ONE]

THE LOWER COURT ERRED IN DENYING M.G.'s MOTION FOR RETURN OF PROPERTY, AS NO PROBABLE CAUSE EXISTED TO VALIDATE THE SEARCH AND SEIZURE OF THE COMPUTER. (Raised below).

POINT [TWO]

SINCE THE SEIZURE OF THE COMPUTER VIOLATED THE FEDERAL AND STATE CONSTITUTIONS, THE ORDER DIRECTING DISCLOSURE OF ITS PASSCODE MUST BE REVERSED. (Raised below).

II.

The standard of review on a motion to suppress is deferential. State v. Nyema, 249 N.J. 509, 526 (2022). "An appellate court reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmed, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We "defer to those findings in recognition of the trial court's 'opportunity to hear and

A-0793-22

see the witness and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Nyema, 249 N.J. at 526 (quoting Elders, 192 N.J. at 244).

"An appellate court should not disturb the trial court's findings merely because 'it might have reached a different conclusion were it the trial tribunal' or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a closer case." State v. Nelson, 237 N.J. 540, 551 (2019) (quoting Elders, 192 N.J. at 244). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Nelson, 237 N.J. at 551-52 (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). However, "[a] trial court's legal conclusions and its view of 'the consequences that flow from the established facts,' are reviewed de novo." Nyema, 249 N.J. at 526-27 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

## A.  Seizure of the Laptop

M.G. contends the State failed to establish that either his residence or his laptop was related to criminal activity, and the "effort to seize and examine" his laptop "smacks of a classic fishing expedition."  In particular, M.G. asserts that Detective Aitken's certification in support of the search warrant application does

not name M.G. as a participant in any illegal activity; there is no assertion that contraband was sent to or from his residence; there is no representation that he, B.G., or others were utilizing M.G.'s residence as a grow facility known as Green Collective; none of M.G.'s financial accounts are alleged to be involved in the transactions mentioned in the certification; there is no indication M.G. knew what his son was doing; the certification contains no information linking B.G. to M.G.'s residence; and none of the forty subpoenas, CDWs, or search warrants issued prior to Aitken's certification involved M.G.

The State counters probable cause existed to seize M.G.'s laptop because B.G. was providing illegally obtained monies to M.G. in furtherance of Green Collective's $400,000 land purchase. In addition, the State argues probable cause was shown because M.G. "knew, participated with, or had knowledge" of B.G.'s illegal activity because M.G. is a majority owner of Green Collective. The State asserts it needs to search the contents of the laptop to determine M.G.'s involvement with the purchase of the land and to ascertain whether B.G. intends to use "illegal gains" to purchase the land through the commingling of funds.

Our review of the record and applicable legal principles convinces us that the court properly denied M.G.'s motion for return of his laptop because probable cause existed to seize it and search the contents. Persuaded by the

factual findings the court made, we conclude the State had a legitimate basis to seize and request to search M.G.'s laptop.

The Fourth Amendment of the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution protect against unreasonable search and seizures by requiring a showing of probable cause to issue a warrant. U.S. Const. amend. IV; N.J. Const. art. 1, ¶ 7. Probable cause for the issuance of a search warrant requires "a fair probability that contraband or evidence of a crime will be found in a particular place." State v. Chippero, 201 N.J. 14, 28 (2009) (quoting United States v. Jones, 994 F.2d 1051, 1056 (3rd Cir. 1993)). Before issuing a warrant, two conclusions by an issuing judge must be made supported by substantial evidence: (1) "that the items sought are in fact, seizable, by virtue of being connected with criminal activity;" and (2) "that the items will be found in the place to be searched." 2 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §3.1 (b) (6th ed. 2022).

"Probable cause eludes precise definition." State v. Sullivan, 169 N.J. 204, 210 (2001). Probable cause has been described as a "commonsense, practical standard 'dealing with probabilities' and the 'practical considerations of everyday life,'" and is generally understood to mean "less than legal evidence

necessary to convict though more than mere naked suspicion." State v. Evers, 175 N.J. 355, 381 (2003) (quoting Sullivan, 169 N.J. at 211).

In evaluating the facts constituting probable cause for the issuance of a search warrant, "the facts should not be reviewed from the vantage point of twenty-twenty hindsight by interpreting the supporting affidavit in a hypertechnical, rather than a commonsense manner." State v. Sheehan, 217 N.J. Super. 20, 27 (App. Div. 1987). Instead, probable cause for the issuance of a search warrant requires "a fair probability that contraband or evidence of a crime will be found in a particular place." Chippero, 201 N.J. at 28 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3rd Cir. 1993)).

To determine whether there is probable cause in a search warrant application, the "analysis begins with review of the four corners of [the] affidavit," Evers, 175 N.J. at 380, and the "totality of the circumstances presented in the affidavit to determine the sufficiency of information offered in support of the warrant." Sullivan, 169 N.J. at 210-212. Indeed, appellate courts "must consider the totality of the circumstances when assessing the reasonable probabilities that flow from evidence submitted in support of a warrant application." Chippero, 201 N.J. at 27.

11

Here, as the court correctly recognized, the State asserted there are "connections" between M.G., his residence, and Green Collective. The record supports that finding because an architectural design for Green Collective was produced for changes to M.G.'s residence, the Agreement indicates M.G. is a 51% owner and B.G. is a 49% owner of the business, and M.G.'s residence is listed as Green Collective's address. Moreover, Detective Aitken's certification establishes, and the proofs show, that the State was continuing its investigation regarding possible tax evasion from the proceeds of the sale of marijuana and the production of marijuana without a license.

There is an ongoing criminal matter involving B.G. In his certification, Detective Aitken provided considerable information, none of which M.G. claims is false, supporting a "practical, commonsense determination [that] . . . there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place" for which the search warrant issued. State v. Marshall, 148 N.J. 89, 602, 610 (2009) (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). Thus, the certification established probable cause to search M.G.'s residence, which ultimately led to the seizure of his laptop. The search warrant was specific, and the seizure of M.G.'s laptop was justified based on the same probable cause that supported a search of his residence. Thus, there is a

12

sufficient nexus between the laptop and B.G.'s criminal activity involving financial and marijuana-related crimes to establish probable cause to seize M.G.'s laptop.

It is also undisputed B.G. received substantial payments through Venmo and PayPal but failed to file income tax returns in 2018 and 2019. B.G. only reported $45,417 of income on his 2020 tax return. The record shows B.G. stated he already spent $100,000 on a legal grow venture, and he "is leasing a property that he is going to eventually buy in cash." These facts considered in tandem with Green Collective claiming a $932 loss on its 2020 income tax return established probable cause to seize M.G.'s laptop. The court therefore did not abuse its discretion by denying M.G.'s motion to return his laptop.

## B.  Disclosure of the Passcode

M.G. next contends there was no legal basis to order disclosure of his laptop passcode because no probable cause existed to seize the laptop. Because we have determined probable cause existed, we reject M.G.'s argument. We add the following brief comments.

In State v. Andrews, 243 N.J. 447, 483 (2020), our Supreme Court recognized "where ownership and control of an electronic device is not in dispute, its passcode is generally not substantive information, is not a clue to an

element of or the commission of a crime, and does not reveal an inference that a crime has been committed." The Court held that under the foregone conclusion exception to the Fifth Amendment, a trial court may require a defendant to disclose the passcode to his or her cellular phone if the State can demonstrate that: the passcode exists; the cellular phone was in the defendant's possession when seized; the defendant owned and operated the cellular phone thereby establishing his or her knowledge of the passcode; and the passcode enables access to the cellular phone's contents. Id. at 478-79.

Similar to the defendant in Andrews, M.G.'s laptop in this case is passcode protected; was in his possession when seized; and there is no question of his ownership. We therefore conclude disclosure of M.G.'s laptop passcode was a foregone conclusion and, as such, the Fifth Amendment was not violated.

Affirmed. We remand to the trial court to vacate the stay of its orders. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14