**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0484-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DWAYNE N. WAKEFIELD, a/k/a
DWAYNE M. WAKEFIELD,
DEWAYNE N. WAKEFIELD,
DWAYNE WAKEFIELD, and
SUG WAKEFIELD,

    Defendant-Appellant.

_____

        Submitted October 27, 2020 – Decided December 1, 2020

        Before Judges Haas, Mawla and Natali.

        On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment Nos. 16-11-0979 and 17-12-0848.

        Joseph E. Krakora, Public Defender, attorney for appellant (Emma R. Moore, Assistant Deputy Public Defender, of counsel and on the brief).

Jeffrey H. Sutherland, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Senior Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the court denied defendant's motion to suppress, he pled guilty pursuant to a negotiated plea agreement to third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a), and second-degree possession with intent to distribute a controlled dangerous substance (CDS), cocaine, N.J.S.A. 2C:35-5(a)(1). The court sentenced defendant to an aggregate sixteen-year prison term with a fifty-four-month period of parole ineligibility and assessed applicable fines and penalties. In exchange for his plea, the State also agreed to dismiss seventeen additional charges in two separate indictments.

Defendant raises the following issues on appeal:

> POINT I
>
> BECAUSE THE PROBABLE CAUSE AFFIDAVIT CONSISTED OF ONLY A FRAGILE TIP, SPARSELY[]DESCRIBED CONTROLLED BUYS, AND A STATE RECORDS CHECK, THE COURT BELOW ERRED IN DENYING MR. WAKEFIELD'S MOTION TO SUPPRESS.
>
> A. The CI's Tip Showed No Indication of Veracity or a Basis of Knowledge.
>
> B. The Criminal History Check Included No Convictions but Several Uncorroborated Tips.

The Remainder of the Records Checks Corroborated Only Innocent, Easy-to-Know Details.

    i. The DMV Records.

    ii. The Criminal History Check.

    iii. The Intelligence Reports.

C. The Controlled Buys Did Not, Either Independently (as the Trial Judge Found) or In Combination with the Tip, Provide a Sufficient Basis for a Finding of Probable Cause.

    i. Controlled Buys On Their Own Are Always Insufficient to Establish Probable Cause.

    ii. The Suspected CDS Was Never Tested or Otherwise Identified.

POINT II

THE COURT BELOW IMPOSED A [SIXTEEN]-YEAR EXTENDED TERM WITHOUT OBSERVING STATUTORILY AND CONSTITUTIONALLY MANDATED PROCEDURE. MR. WAKEFIELD'S SENTENCE MUST THEREFORE BE VACATED.

A. The State's Failure to Give Sufficient Notice That It Was Pursuing an Extended Term and the Basis Therefore and to Confirm Such Notice On the Record.

B. The Prosecutor's Failure to Develop a Record Explaining Its Factual Grounds and Choice to Pursue the Extended Term.

3

> C. The Court's Failure to Explain and Document
> Its Acceptance of the Extended[-]Term
> Recommendation.

After reviewing the record in light of the contentions on appeal and the applicable law, we affirm.

## I.

On September 7, 2016, Officer Michael Pastore (Pastore) of the Middle Township Police Department Street Crimes Unit (SCU) applied for a warrant to search defendant and Angel Davis'[1] (Davis) Whitesboro residence. The application was supported by Pastore's affidavit which, among other information, detailed his interactions with a confidential informant (CI) in August 2016.[2]

According to the affidavit, the CI informed Pastore that he/she had "first-hand knowledge" that defendant and Davis were distributing crack cocaine. The CI further noted that he/she had previously purchased crack cocaine from them "in the past." The CI also stated that defendant and Davis were "currently

---

[1]  Davis was a co-defendant but is not a party to this appeal.

[2]  The affidavit incorrectly stated that Pastore met with the CI on September 22, 2016, which the State ascribes to a typographical error. We have considered, and reject, defendant's arguments that this error affects the "staleness" of the CI's tip for the reasons detailed on pages 12-18.

A-0484-18T4

selling" cocaine from their home. Pastore conducted a New Jersey motor vehicle inquiry which confirmed that the address provided by the CI was defendant's residence. The CI further informed Pastore that defendant and Davis' five young children also lived in the home.

During the week of August 29, 2016, Pastore coordinated with the CI to arrange a controlled purchase of crack cocaine from defendant and Davis. Prior to the purchase, the CI was searched and found to be free of any "contraband and money." Pastore then provided the CI with money and instructed the CI "to meet with [him] immediately upon completion of the transaction." SCU officers who were surveilling the transaction observed the CI enter the residence. The affidavit further noted that the SCU officers did not witness the CI contact any other individual outside of the home.

The CI left the residence, met with Pastore, and handed him what was suspected to be crack cocaine purchased from Davis. A field test was not performed, and the purported narcotics were subsequently logged into evidence "pending analysis by the Cape May County Prosecutor's Laboratory." The CI further noted that both defendant, Davis, and the five children were present at the residence when the drug transaction occurred.

That same week, Pastore coordinated with the CI to arrange a second controlled purchase of crack cocaine from defendant and Davis at their home. The CI was again searched, provided with money, and observed by SCU officers. The CI purchased the suspected narcotics from Davis but once again, no field test was performed on the purported narcotics.[3]

In addition to describing the two controlled buys, the affidavit included a detailed account of defendant's criminal history. Pastore stated that he had obtained this information through a criminal history check, which revealed that the defendant had been arrested twenty-one times over a span of approximately thirty years for crimes including possession of narcotics, assault, and resisting arrest. The affidavit, however, did not provide the final dispositions of the defendant's prior arrests.

The affidavit also included additional background information regarding defendant contained in intelligence reports provided by the Cape May County Prosecutor's Office. Specifically, the affidavit noted a January 20, 2016 incident where an informant "stated he could purchase firearms from [defendant]." The affidavit further provided that on two separate occasions concerned citizens

---

[3] Defendant admitted at his plea hearing that the suspected narcotics seized were cocaine.

contacted the Cape May County Sheriff's tip line to report that they believed defendant was selling narcotics in the Whitesboro and Wildwood area. The affidavit also referenced an April 1, 2016 incident where defendant was listed as a suspect in a shooting.

Based on the information in the affidavit, the court issued a "no-knock" search warrant for the defendant, Davis, and their residence. Pastore executed the search warrant and seized suspected cocaine, heroin, marijuana, approximately $1,200 in cash, a digital scale, two pistol crossbows, and a "3800 PC Type Ultra High Power Taser."

Defendant moved to suppress the physical evidence seized pursuant to the search warrant. He principally asserted that the warrant lacked probable cause because it included the incorrect date for when Pastore met with the CI and that the CI's tip was not "sufficiently corroborated." The court rejected defendant's arguments and specifically found that the "independent corroboration in the form of two controlled buys . . . support[ed] a finding of probable cause."

As defendant also challenges the court's imposition of an extended term, we briefly discuss the plea discussions. We also discuss relevant portions of defendant's bail and sentencing proceedings.

As noted, defendant pled guilty to third-degree aggravated assault on a law enforcement officer and second-degree possession with intent to distribute cocaine. Before and after defendant's plea, the State raised his extensive prior criminal history with the court. For example, at his bail hearing, the State opposed defendant's release and informed the court that defendant had "[twenty-one] arrests [and] [ten] indictable convictions."

In his plea form, defendant responded to the first question by stating that the statutory maximum for the two offenses to which he intended to plead guilty was fifteen years, ten years for the second-degree possession with intent to distribute charge and five years for the third-degree assault offense. He acknowledged in response to question seven, however, that he was aware that the charges pled to required "a mandatory period of parole ineligibility <u>or a mandatory extended term</u>[.]" (emphasis added). He failed to complete fully the response to that question which indicated the length of those mandatory periods but provided additional relevant information in response to question thirteen where he acknowledged in handwritten notes that the "prosecutor has agreed to recommend . . . [a] [sixteen] year[] [sentence] . . . [with a fifty-four-month parole

A-0484-18T4

ineligibility] pursuant to <u>Brimage</u>."[4]  Moreover, in a supplemental plea form defendant noted that "[he] entered into [an] agreement to provide for a lesser sentence <u>or period of parole ineligibility than would otherwise be required[.]</u>" (emphasis added).

That same day at the defendant's plea hearing, the State expressed that "[defendant] is somebody that is mandatory pursuant to the <u>Brimage</u> guidelines." Specifically, the State noted that "even though it's a second-degree offense he would be sentenced in the first-degree range for the recommended sentence of . . . [sixteen years] with a [fifty-four-month parole ineligibility]."  The court then confirmed that defendant's second-degree possession charge "would be sentenced as a first [degree][.]"

---

[4] <u>State v. Brimage</u>, 153 N.J. 1 (1998).  In <u>Brimage</u>, our Supreme Court directed the Attorney General to promulgate uniform plea offer guidelines. <u>Id.</u> at 25. The guidelines are intended to provide standards for plea offers for Comprehensive Drug Reform Act of 1987, N.J.S.A. 2C:35-1 to 36-1 (CDRA) offenses and reduce the chance of disparity in sentencing. <u>Brimage</u>, 153 N.J. at 13.  Plea agreements under N.J.S.A. 2C:35-12 are governed by those guidelines, 153 N.J. at 24-25; <u>see</u> <u>Revised Attorney General Guidelines for Negotiating Cases Under N.J.S.A. 2C:35-12</u> (July 15, 2004); <u>State v. Fowlkes</u>, 169 N.J. 387, 389 (2001).  As discussed, <u>infra</u>, the second-degree possession with intent to distribute a CDS charge was a <u>Brimage</u>-eligible CDRA offense that subjected defendant to a mandatory extended term sentence under N.J.S.A. 2C:43-6(f). Defendant does not contend that his negotiated plea was contrary to the <u>Brimage</u> guidelines.

A-0484-18T4

The court also questioned the defendant extensively as to whether he accepted the plea voluntarily and knowingly:

> [The Court]: All right. In front of you are the yellow plea forms. Did you review those with your attorney?
>
> [Defendant]: Yes, ma'am.
>
> [The Court]: All right. And did you initial all of those pages?
>
> [Defendant]: Yes, ma'am.
>
> [The Court]: And does your signature appear on those pages?
>
> [Defendant]: Yes, ma'am
>
> [The Court]: Did you answer all the questions on the plea forms truthfully?
>
> [Defendant]: Yes.
>
> [The Court]: And do the circled responses indicate or represent your truthful answers?
>
> [Defendant]: Yes, ma'am.
>
> [The Court]: Okay. Do you understand what you're doing today?
>
> [Defendant]: Yes, ma'am.
>
> [The Court]: What are you doing?
>
> [Defendant]: I'm giving fact finding of the charges that . . . I'm pleading guilty to.

. . . .

[The Court]: And if you have any reservations then I don't want you to enter a guilty plea.

[Defendant]: I don't have any reservations.

The court then directed the defendant to specific sections of the plea form to ensure that he understood its terms.

[The Court]: Okay. Are you pleading guilty to these two charges of aggravated assault and possession with intent because you are, in fact, guilty of those charges?

[Defendant]: Yes, ma'am.

. . . .

[The Court]: Okay. You heard the recommendation of the prosecutor for the sentence. That also appears on page [three] at number [thirteen]. [This] [i]ndicates that there is a four-year New Jersey state prison sentence flat to run concurrent with a [sixteen] year New Jersey State prison sentence of which you [must] serve [fifty-four] months. Do you understand that to be the recommendation?

[Defendant]: Yes, ma'am.

. . . .

[The Court]: Okay. And if you look at the first page it indicates that the maximum sentence you could receive on these two charges combined is [fifteen] years. Do you understand that?

11

[Defendant]: Yes.

[The Court]: Okay. And you also understand that pursuant to <u>Brimage</u> there is this mandatory period of parole ineligibility of [fifty-four] months?

[Defendant]: Yes.

At sentencing, the trial court found, and ascribed significant weight to aggravating factor three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that the defendant will commit another offense") and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring the defendant and others from violating the law"). The court also found and assigned "more than moderate-weight" to aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted").

After the court concluded that the aggravating factors preponderated over the non-existent mitigating factors, the court sentenced defendant in accordance with the negotiated plea agreement. The court further noted that the plea deal was in accordance with "the Attorney General Guidelines mandated by [Brimage]" and that "[t]he sentence recommendation . . . is appropriate under the facts and circumstances of this case and appears to be in the interest of justice."

## II.

In defendant's first point, he contends that the court committed error in denying his motion to suppress because the search of his residence and person was based on an unconstitutional warrant that was issued without probable cause. Defendant specifically contends that the facts contained in the probable cause affidavit, individually or collectively, failed to establish that there was a fair probability that contraband would be found in defendant's residence or on him personally. We disagree.

"[A] search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005) (alteration in original) (quoting Jones, 179 N.J. at 388). When "reviewing a grant or denial of a motion to suppress [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014)

(citing State v. Elders, 192 N.J. 224, 243 (2007)). We "should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 425 (quoting Elders, 192 N.J. at 244) (citation omitted).

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citations omitted). Thus, "a trial court's legal conclusions are reviewed de novo." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Keyes, 184 N.J. at 554 (quoting Jones, 179 N.J. at 389).

The New Jersey Constitution provides, "no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized." N.J. Const. art. I, ¶ 7. "When a court receives an application from the police for a search warrant, it should not issue that warrant 'unless [it] is satisfied that there is probable cause to believe that . . . evidence of a crime is at the place sought to be searched.'" State v. Smith, 212 N.J. 365, 388 (2012) (quoting State v. Sullivan, 169 N.J. 204, 210 (2001)) (alterations in original).

Probable cause requires "less than legal evidence necessary to convict though more than mere naked suspicion." Ibid. (quoting State v. Mark, 46 N.J. 262, 271 (1966)). It exists when a police officer possesses "a 'well grounded' suspicion that a crime has been or is being committed." Sullivan, 169 N.J. at 211. The court must "make a practical, common sense determination whether, given all of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. O'Neal, 190 N.J. 601, 612 (2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Further, probable cause must be determined "based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

"Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." Jones, 179 N.J. at 389 (citing Sullivan, 169 N.J. at 212). The issuing court must consider the totality of the circumstances in determining whether an informant's tip establishes probable cause, including the informant's "veracity and basis of knowledge." Ibid. (citing State v. Novembrino, 105 N.J. 95, 123

A-0484-18T4

(1987)); see also Gates, 462 U.S. at 238-39. These are the most important factors, and a deficiency in one may be compensated "by a strong showing as to the other, or by some other indicia of reliability." State v. Zutic, 155 N.J. 103, 110-11 (1998).

"[R]elevant corroborating facts may include a controlled drug buy performed on the basis of the tip, positive test results of the drugs obtained, records confirming the informant's description of the target location, the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit." Keyes, 184 N.J. at 556. Although no fact by itself establishes probable cause, "a successful controlled [drug] buy 'typically will be persuasive evidence in establishing probable cause.'" Ibid. (quoting Sullivan, 169 N.J. at 217.)

Here, we agree with the trial court that the affidavit established probable cause for the issuance of the warrant. In this regard, the affidavit detailed: 1) Pastore's observations of two separate controlled buys of narcotics at defendant's place of residence; 2) defendant's prior criminal record involving illicit narcotics; and 3) Pastore's relevant training and experience as a law enforcement

officer.[5]   Contrary to defendant's contention, the affidavit included ample evidence supporting "a practical, common sense determination [that], given all of the circumstances, there [was] a fair probability that contraband or evidence of a crime [would] be found in [the] particular place" for which the search warrants were issued.  Marshall, 199 N.J. at 610 (quoting O'Neal, 190 N.J. at 612); see also Jones, 179 N.J. at 389 (noting the court must consider "the totality of the circumstances" in determining if there is probable cause for a search).

We specifically reject defendant's claim that the affidavit was deficient because the items purchased in the two controlled buys were not tested to confirm they were controlled dangerous substances.  A positive test for suspected narcotics is not essential to a finding of probable cause that items are controlled dangerous substances.  See Jones, 179 N.J. at 394.  Here, as in Jones, "nothing presented . . . suggested that the purchased substance was anything other than what its sellers held it out to be."  Id. at 395.  In that case, the court further noted that regardless of the chemical makeup of the purported narcotics,

---

[5]  We acknowledge the affidavit did not inform the court of the disposition of the charges and therefore was not in accordance with the instruction in Jones that "arrest records disclosed in supporting affidavits" for a "no-knock" warrant should "include the disposition of those arrests."  179 N.J. at 404.  Despite this omission, we are nevertheless satisfied that the affidavit provided more than sufficient information to establish probable cause for the issuance of the search warrant.

there was still sufficient information to find "probable cause that illegal narcotics activity was occurring." Ibid. Specifically, the court held that in the "totality of the circumstances," the officer's narcotics training, and the coordinated purchase of illegal drugs established "sufficient probable cause to issue the search warrant." Id. at 396-97.

The totality of the facts presented here—including the coordination of the controlled purchase of crack cocaine, the circumstances under which the controlled buys were made, and Pastore's training and experience—established probable cause to believe the purchased items were illicit narcotics. Although the items purchased during the two controlled buys were not tested at the time Pastore applied for the warrant "[t]he circumstances detailed in the warrant application plainly indicated that the sole purpose of the [controlled buys] between the informant and the suspects . . . was to exchange money for drugs." Id. at 395.

In sum, the facts contained in the affidavit conclude that there was "a fair probability that contraband or evidence of a crime [would] be found in a particular place." O'Neal, 190 N.J. at 612. Specifically, the affidavit states that the CI knew that the defendant was "selling crack cocaine from [his] residence located in Whitesboro" and that he/she had "bought crack cocaine from

[defendant] . . . in the past." The affidavit further noted that this "tip" was corroborated when the CI had obtained what was purported to be crack cocaine from two controlled purchases at defendant's residence.

III.

Defendant next argues that his sixteen-year extended term sentence should be vacated because the court failed to "comply with mandatory procedural safeguards" and he was therefore sentenced contrary to his due process rights. Specifically, defendant asserts that the State failed to give sufficient notice that it was pursuing an extended term pursuant to Rule 3:21-4(e) and failed to delineate its reason for pursuing the sentence, claiming it is unclear from the record if the court's basis for imposing an extended term was pursuant to the mandatory provisions of N.J.S.A. 2C:43-6(f) or the discretionary provisions of N.J.S.A. 2C:44-3(a). In addition, the defendant contends that the court "fail[ed] to explain and document its acceptance of the extended term recommendation." We are not persuaded by any of these arguments.

When reviewing a sentence imposed by the trial court, we apply a "deferential" standard of review. State v. Fuentes, 217 N.J. 57, 70 (2014). We will "not substitute [our] judgment for that of the sentencing court." Ibid. We must uphold the trial court's sentencing decision unless: (1) the court did not

comply with the sentencing guidelines; (2) the court's findings on the aggravating and mitigating factors were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." Ibid. (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)) (alteration in original). "These standards apply as well to sentences that result from guilty pleas, including those guilty pleas that are entered as part of a plea agreement." State v. Sainz, 107 N.J. 283, 292 (1987) (citing State v. O'Connor, 105 N.J. 399, 405-08 (1987)).

We initially note that defendant failed to challenge his plea or raise any due process argument at any point in the trial court and for that reason alone we could reject his newly minted claims. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We have nevertheless considered the arguments on the merits and reject them.

Defendant's arguments proceed on the assumption that a lack of clarity exists in the record as to his eligibility for a mandatory extended term under N.J.S.A. 2C:43-6(f), or a discretionary term under N.J.S.A. 2C:44-3(a). Based on our review of the record we disagree.

N.J.S.A. 2C:43-6(f) provides that:

A person convicted of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance . . . under N.J.S.[A. ]2C:35-5 . . . who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute a controlled dangerous substance . . . shall upon application of the prosecuting attorney be sentenced by the court to an extended term as authorized by subsection c of N.J.S.[A. ]2C:43-7 . . . . The term of imprisonment shall, except as may be provided in N.J.S.[A. ]2C:35-12, include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater, not less than seven years if the person is convicted of a violation of N.J.S.[A. ]2C:35-6, or [eighteen] months in the case of a fourth degree crime, during which the defendant shall be ineligible for parole.

[N.J.S.A. 2C:43-6(f) (emphasis added).]

Here, defendant's presentence report, which the sentencing court expressly referenced and relied upon twice during the sentencing hearing (the court noted that it "reviewed and considered defendant's criminal history" and that its "decision is based in part upon confidential information contained in the pre-sentence investigation report"), and which was submitted without objection, confirms that defendant was convicted in 1988 and 1989 for distribution of CDS contrary to N.J.S.A. 2C:35-5(a)(1). He was also convicted of possession of CDS in 1989, N.J.S.A. 2C:35-10(a); resisting arrest in 1989, N.J.S.A. 2C:29-2;

21

loitering for purpose of illegally using, possessing, or selling CDS in 2002, N.J.S.A. 2C:33-2.1; hindering apprehension or prosecution in 2004, N.J.S.A. 2C:29-3(b)(2); criminal mischief in 2005, N.J.S.A. 2C:17-3(b)(2); and false imprisonment in 2016, N.J.S.A. 2C:13-3. Defendant also pled guilty to CDS-related offenses in 1996, 2007, and 2009.

Defendant also had four municipal convictions for possession of a CDS, N.J.S.A. 2C:35-10(a). See State v. Irrizary, 328 N.J. Super. 198, 203 (App. Div. 2000) (noting that intervening convictions weigh against a finding that a predicate act was too "remote" for the imposition of an extended term sentence). Although, defendant claims he does not "concede" that he was subject to a mandatory extended term, the record, as stated, establishes beyond peradventure that his repeated convictions for N.J.S.A. 2C:35-5(a)(1) and his later CDS-related convictions subjected him to the mandatory provisions of N.J.S.A. 2C:43-6(f). Further, the trial court clearly considered defendant's extensive criminal history when it found "[e]ight of the defendant's ten felony convictions resulted from CDS-related offenses."

As a defendant subject to a mandatory extended term, any plea that reduced his mandatory or minimum term must be entered under N.J.S.A. 2C:35-

12 (Section 12). See State v. Courtney, 243 N.J. 77, 88 (2020). Section 12 provides that:

> [w]henever an offense defined in this chapter specifies a mandatory sentence of imprisonment which includes a minimum term during which the defendant shall be ineligible for parole, [or] a mandatory extended term which includes a period of parole ineligibility . . . the court upon conviction shall impose the mandatory sentence . . . unless the defendant has pleaded guilty pursuant to a negotiated agreement . . . which provides for a lesser sentence [or] period of parole ineligibility . . . . The negotiated plea . . . may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law [or] a specified period of parole ineligibility . . . . In that event, the court at sentencing shall not impose a lesser term of imprisonment [or] lesser period of parole ineligibility . . . .
>
> [N.J.S.A. 2C:35-12 (emphasis added).]

Here, defendant agreed to a negotiated plea under Section 12 as he pled guilty to an extended term sixteen-year aggregate sentence with a mandatory fifty-four months of parole ineligibility. Defendant, however, was subject to a sixty-four-month mandatory period of parole ineligibility and a term of imprisonment "between [ten] and [twenty] years," pursuant to N.J.S.A. 2C:43-6(f).

Rule 3:21-4(e) governs the procedures for a motion "pursuant to . . . N.J.S.A. 2C:43-6(f) for the imposition of an extended term of imprisonment."

The Rule provides that when defendant accepts a negotiated disposition that includes a recommendation of an extended term "the prosecutor's oral notice and the recordation of the extended term exposure in the plea form completed by defendant and reviewed on the record shall serve as the State's motion." R. 3:21-4(e).

Here, appropriate notice of the extended term sentence was provided pursuant to Rule 3:21-4(e). That notice is reflected in the defendant's affirmative answer to the question posed in the plea form that asked "if [defendant] enter[ed] a plea of guilty to any charges that require a mandatory period of parole ineligibility or a mandatory extended term[.]" (Emphasis added). In addition, the plea form clearly indicates that the prosecutor recommended a sixteen-year sentence with fifty-four months of parole ineligibility "pursuant to Brimage." Moreover, in the supplemental plea form, the defendant acknowledged that he entered into the agreement "to provide for a lesser sentence or period of parole ineligibility than would otherwise be required[.]"

In addition, the State provided oral notice of the extended term sentence at the defendant's plea hearing. Specifically, the State noted that "[defendant] is somebody that is mandatory pursuant to the Brimage guidelines. So even

24

though it's a second-degree offense he would be sentenced in the first-degree range for the recommended sentence of [sixteen years] with a [fifty-four-month parole ineligibility]."

Defendant was also questioned extensively as to his understanding of the extended sentence by the trial court at his plea hearing. In this regard, the trial court directed defendant to "page [three] at number [thirteen]" of the plea form and confirmed that he understood "that there is a four-year . . . state prison sentence flat to run concurrent with a [sixteen] year . . . prison sentence of which you must serve [fifty-four] months." The court also confirmed that the defendant understood "that pursuant to Brimage there is this mandatory period of parole ineligibility of [fifty-four] months[.]"

Further, defendant has been aware of a mandatory extended term sentence since his hearing for bail modification in September 2017. Indeed, defendant's counsel expressly stated, "we do recognize that his offer is a Brimage offer." When taken into account with the continuous references to Brimage throughout the course of the prosecution and defendant's own acknowledgement of the extended term in the plea form, there is ample evidence to support a finding that defendant was not deprived of proper notice that the State was seeking a mandatory extended term.

We also find instructive the Supreme Court's discussion in its recent decision State v. Courtney, 243 N.J. 77, 88 (2020). In Courtney, the Court addressed whether the State was required to file a formal application of its waiver of an extended term sentence in a plea negotiated under Section 12. Id. at 88. In that case, the defendant was subject to an extended term pursuant to N.J.S.A. 2C:43-6(f). Ibid. The Court noted that subsection (f) "requires the prosecutor to file an application to impose an extended term." Ibid. (quoting Brimage, 153 N.J. at 11). Notably, the Court stated that "[n]owhere in Section 12 is there a requirement for a formal procedure" and "Section 12 expressly permits the State to negotiate away its right to seek mandatory sentences." Ibid. (emphasis added).

The Courtney Court also emphasized that it would be "clear in most cases whether a defendant is extended-term eligible under N.J.S.A. 2C:43-6(f)" but in those "small number of matters" where the issue is disputed, the Court proposed for consideration by the Criminal Practice Committee and the Court the following revisions to Rule 3:21-4(e)'s procedures:

> 1) If the prosecutor agrees not to file an application for an extended term as part of a plea agreement but intends to seek the benefit of Section 12 at sentencing, then the trial court shall ask the prosecution on the record whether defendant is extended-term eligible;

2) Defendant shall be given an opportunity to object;

3) If defendant does not object, the trial court's inquiry ends there, and the prosecution may proceed under the plea agreement without being required to file a formal motion;

4) If, however, defendant objects, then the prosecution would have to meet its burden of proof by demonstrating defendant's eligibility for an extended term; and

5) The trial court would then make a finding as to whether the prosecution has met its burden.

[Id. at. at 90-91.]

Finally, the Court requested "the Director of the Administrative Office of the Courts to revise the standard plea form to confirm whether the prosecution agrees not to request an extended term under N.J.S.A. 2C:43-6(f) but still seeks the benefit of a negotiated waiver of the CDRA's mandatory sentence requirements under Section 12." Id. at 91.[6]

---

[6] As we discussed, at the plea hearing the court stated that "if you look at the first page it indicates that the maximum sentence [defendant] could receive on these two charges combined is [fifteen] years." It is clear from a review of the entire record that the court was referring to question one of the plea form in which defendant identified the statutory maximum sentence for the two offenses to which he was pleading guilty as opposed to the potential extended term sentence to which he was clearly exposed. The court's later colloquy at the plea and sentencing hearings made clear that defendant was pleading guilty to sixteen, not fifteen years. And in this regard defendant did not claim in the trial

Although we have already concluded that it was clear that defendant was eligible for a mandatory extended term and that the State has provided sufficient notice under <u>Rule</u> 3:21-4(e), we are nevertheless satisfied that the State has satisfied its notice requirement under the Supreme Court's proposed revisions to <u>Rule</u> 3:21-4(e) as well. As noted, in addition to the colloquy noted at the bail and sentencing proceedings, at the plea hearing the trial court confirmed with the State that the second-degree possession charge "would be sentenced as a first [degree offense]." At no point did the defendant object to this statement.

Finally, we reject defendant's argument that the trial court failed to "explain and document its acceptance of the extended-term recommendation." <u>Rule</u> 3:21-4(e) further provides that "the sentence shall include a determination as to whether the defendant was convicted and sentenced to an extended term of imprisonment as provided in . . . N.J.S.A. 2C:43-6(f) . . . and the commitment or order of sentence which directs the defendant's confinement shall so specify."

As noted above, the trial court considered defendant's criminal history in its application of aggravating factors. Specifically, the court noted after reviewing the presentence report that "defendant's ten felony convictions

---

court, or before us, that he understood that his plea imposed a fifteen rather than sixteen-year extended term sentence.

28

resulted from CDS-related offenses." The court further found that defendant's sentence was consistent with the "Attorney General Guidelines mandated by [Brimage]." Finally, the Judgment of Conviction memorialized that defendant was sentenced pursuant to the Attorney General Guidelines mandated by Brimage.

We therefore conclude that the judge appropriately sentenced defendant to an extended term with a period of parole ineligibility less than that prescribed by N.J.S.A. 2C:43-6(f) and there is sufficient credible evidence in the record to support the judge's findings including those on the aggravating and mitigating factors. The sentence is reasonable and does not shock the judicial conscience. See Fuentes, 217 N.J. at 70 (quoting Roth, 95 N.J. at 364-65). To the extent we have not addressed any of defendant's remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

29